515 So.2d 821 (1987)
STATE of Louisiana
v.
Robert AGNELLY.
No. 87-KA-289.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1987.
*822 John Mamoulides, Dist. Atty., Chuck Credo, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of counsel, Office of the District Attorney, Gretna, for plaintiff-appellee.
Martha E. Sassone, Gretna, for defendant-appellant.
Before KLIEBERT, BOWES and GOTHARD, JJ.
KLIEBERT, Judge.
The defendant, Robert Agnelly, was charged by bill of information with second degree battery. The charge was subsequently reduced to simple battery. Defendant was tried before the bench, found guilty as charged and sentenced to six months in parish prison. Execution of sentence was suspended and defendant was placed on one year's active probation subject to the conditions that he serve thirty days in prison, pay restitution to the victim in the amount of $2,300.00, and pay a $25.00 per month probation fee. Defendant appealed[1] and assigned the following errors:
(1) The evidence is not sufficient to justify the verdict;
(2) Any and all errors patent on the face of the record;
(3) The trial court refused to set bond for defendant's release until sentencing; and
(4) The sentence imposed is illegal.
For the reasons which follow we affirm the conviction. The sentence is reversed and set aside and the case remanded to the district court for resentencing in accordance with law.
The basic facts are undisputed: The male defendant and the female victim lived together for an extended period of time, and on March 15, 1986 an argument ensued in their residence during the course of which the defendant punched the victim in the face, causing a cut to open on her forehead and crushing the cartilage on the left side of her nose. The central issue at trial was whether the defendant acted in self-defense, for he claimed he punched the victim because she threatened to cut him and reached for a knife.
ASSIGNMENT OF ERROR NO. 1.
In his first assignment defendant does not enumerate specific deficiencies but rather requests that this court make an independent examination of the evidence presented. The state opposes such an examination on the grounds defendant failed to raise the question in the trial court either by a motion for a new trial or by the filing of a formal assignment of error. We now note, however, that a supplemental record filed in this court contains formal assignments of error filed by defendant.
In light of defendant's admission that a battery occurred, his challenge to the sufficiency *823 of the evidence must be directed toward the trial court's finding that the evidence did not indicate defendant acted in self-defense. A determination as to whether the trial court's finding was correct requires an initial inquiry into the appropriate "burden of persuasion" or "burden of proof" when the defense of self-defense is asserted.
In State v. Freeman, 427 So.2d 1161, 1163 (La.1983) the supreme court stated:
"[1] In the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary. State v. Landry, supra [381 So.2d 462 (La.1980) ]; State v. Ford, 368 So.2d 1074 (La.1979); State v. Guinn, supra [319 So.2d 407 (La.1975)].
There is apparently no Louisiana jurisprudence distinguishing the burdens of persuasion applicable to self-defense in homicide and non-homicide situations.
The burden of persuasion in proving self-defense in a non-homicide situation pursuant to La.R.S. 14:19, which entails a subjective as well as an objective inquiry, could arguably, in fairness to the State, be upon the defendant, since a subjective inquiry is involved.
We need not, however, in this case, definitively resolve this narrow legal issue, for irrespective of who bears the burden in this case, and even assuming that the State has the burden of proving beyond a reasonable doubt in this non-homicide situation that defendant did not act in self-defense, we conclude that the State has carried its burden of proof." (Footnotes omitted)
The supreme court has yet to definitively resolve the issue, and the appellate courts have generally followed the Freeman court's example and resolved cases by holding that even assuming the state was required to meet the "beyond a reasonable doubt" standard, the burden had been met. See State v. Mason, 499 So.2d 551 (La.App. 2nd Cir.1986); State v. Navarre, 498 So.2d 249 (La.App. 1st Cir.1986); State v. Lejeune, 487 So.2d 1243 (La.App. 3rd Cir. 1986).
However, the issue was squarely addressed by this court in State v. Barnes, 491 So.2d 42 (La.App. 5th Cir.1986) wherein the trial judge refused to instruct the jury that the burden was on the state to show the defendant had not acted in self-defense, and instead instructed the jury that the burden was on the defendant to show by a preponderance of evidence that he acted in self-defense. After a comprehensive analysis of state and federal jurisprudence, the majority of the panel concluded the jury charge given by the trial judge correctly placed the burden of proving self-defense on the defendants. Bowes, J., dissented with written reasons indicating he felt the state had the burden of proving beyond a reasonable doubt in a nonhomicide situation that the defendant did not act in self-defense.
We find it unnecessary in the present case to predicate our decision on the precise holding in Barnes, for the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact either that defendant failed to prove by a preponderance of evidence that he acted in self-defense or that the state proved beyond a reasonable doubt that defendant did not act in self-defense.
The incident took place in the kitchen of the residence shared by the victim, her nineteen-year-old daughter and ten-year-old son, and the defendant. Present at the time were the aforementioned parties, the defendant's son and daughter-in-law, and a family friend, David Allen. The investigating officer took statements from the victim, her daughter, and Allen. The defendant had left the scene before the officer arrived. Although both defendant and his son admitted they contacted Allen during the week of the trial, he disappeared and the state was unable to locate him for trial.
The victim testified she had been attempting to force the defendant to move out of the residence for several months. When she again told the defendant to leave on March 15, 1986 he replied "make me," whereupon she threatened to call the police. *824 The defendant pushed her, and Allen quickly positioned himself between the victim and the defendant in an attempt to prevent physical violence; however, the defendant reached around Allen and punched the victim in the face. The victim related she did not attempt to strike the defendant or reach for a knife. The victim's testimony was corroborated by the testimonies of her son and daughter, with the additional observation that the daughter grabbed the defendant by the hair and he punched the victim in an attempt to prevent him from again striking the victim.
The defendant testified as follows: On the day of the incident he discovered the victim had withdrawn $800.00 from his checking account, causing several outstanding checks to be dishonored. He was "mad as hell" and drove around for several hours. Defendant, who acknowledged he is an alcoholic, at first indicated he was not drinking but under cross-examination admitted having had "a couple of drinks" before returning to the residence. Defendant called an acquaintance, Sgt. Sheldon Prevou, and asked that an officer be present when he confronted the victim. However, according to defendant "it came down" before he was able to obtain the services of a policeman. Defendant testified the victim told him to leave when he confronted her, and as he was attempting to comply, the victim's daughter grabbed him by the hair. The defendant's son pulled the victim's daughter away as the victim moved in from the opposite direction with Allen trying to restrain her. According to defendant the victim threatened to cut him and was reaching for a knife when he "popped" her because he was trapped in a corner and believed the victim would cut him "because she tried before." Defendant did not expound further on the alleged earlier incident. Defendant at first denied, but then admitted to a previous conviction on a weapons charge, and explained that he left the scene of the present incident "because I always get the short end of the deal when the police come out to the house."
The defendant's son testified he ran into the kitchen when he heard shouting and discovered that the victim and her daughter had cornered the defendant, although neither was touching him. After the victim's daughter grabbed the defendant, the son pushed her approximately six feet away and thereafter heard the "pop" of the punch. The defendant's son did not hear any threats or see the victim reach for a knife. Sgt. Prevou testified that the defendant did call him about a police escort but he did not remember the date of the call, and the purpose of the escort was in order that defendant might pick up some tools. Defendant called Sgt. Prevou after his arrest and informed him there had been a "scramble" during which the victim struck him and he retaliated; defendant did not mention that a knife was involved.
At the conclusion of the case the trial judge made the following observations:
"The Court is of the opinion that Mr. Agnelly could have run to get away, if that is what he sought to do. He admitted he was mad as hell. He had been drinking and had a drinking problem; and, unfortunately, we know when people start to drink, they don't know how much they had to drink. I do not believe this situation, that there was no way for him to get away from Mrs. Virgets. It has not been shown that she even picked up a knife or tried to pick up the knife, no testimony to that effect. The Court finds the believability of the State's witnesses, and the Court believes he is guilty of that, the defendant is guilty of simple battery, proven beyond a reasonable doubt."
The trial judge essentially made a credibility choice. Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject in whole or in part the testimony of any witnesses. It is not the function of an appellate court to evaluate the credibility of witnesses on a cold record and overturn the trial court on its factual determinations. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Cockerham, 442 So.2d 1257 (La.App. 5th Cir.1983). The testimony adduced at trial, *825 viewed in the light most favorable to the state, negates beyond a reasonable doubt defendant's claim that he acted in self-defense.
ASSIGNMENT OF ERROR NO. 3
Defendant designates the trial court erred in refusing to set bond for defendant's release until sentencing. However, he fails to brief or argue this assignment. It is well settled that an assignment of error which is not briefed is considered abandoned. See Uniform RulesCourts of Appeal, Rule 2-12.4; State v. Kelly, 453 So.2d 641 (La.App. 5th Cir.1984); State v. Allen, 451 So.2d 618 (La.App. 5th Cir.1984).
ASSIGNMENT OF ERROR NO. 4
Defendant contends the court erred in imposing a term of imprisonment as a condition of probation because the condition is not authorized by statute and exposes him to a greater term of imprisonment than is permitted under the simple battery statute. The state acknowledges the sentencing error and requests that the case be remanded for resentencing.
A case directly on point is State v. Wagner, 410 So.2d 1089, 1091 (La.1982) wherein the court noted:
"This precise issue has recently been addressed by this Court. State v. Upton, 382 So.2d 1388 (La.1980). Therein a unanimous Court, in a per curiam opinion, held that the sentence of a defendant convicted of a misdemeanor was illegal where he had been ordered to serve six months in prison as a condition of his probation.
[W]hile Art. 894 also provides for `such conditions [of probation] as the court may fix,' La. C.Cr.P. art. 895 governing general conditions of probation for both misdemeanors and felonies specifically reserves the condition of time spent in jail (`not to exceed one year') to `felony cases.' 382 So.2d 1388, at 1389.
Therefore, we find merit in defendant's argument that imposition of a prison term as a condition of probation in misdemeanor cases is not authorized by La. C.Cr.P. art. 895, and, thus, such a condition could not be added to his probation.
We also find the imposition of the one month prison term illegal in this case because it exposes the defendant to a greater prison term than is permitted by the statute he violated.
Defendant pled guilty to simple battery. La.R.S. 14:35. The maximum penalty provided for the crime is six months imprisonment. He was sentenced to serve six months in parish prison, suspended. Requiring defendant to serve one month imprisonment (in this case, as an additional condition of probation) exposes defendant to the risk of serving seven months in jail in the event his probation should be revoked. Seven months exceeds the maximum prison term authorized by R.S. 14:35." (Footnote Omitted).
See also State v. Pontiff, 490 So.2d 414 (La.App. 5th Cir.1986); State v. Fanning, 485 So.2d 547 (La.App. 5th Cir.1986).
The present case is distinguishable from State v. Guillory, 404 So.2d 453 (La.1981) wherein the court recognized that a trial judge has the authority, under La. C.Cr.P. art. 894, during initial sentencing in misdemeanor cases to impose a jail term with part to be served and part to be suspended. Here the court suspended the entire sentence and ordered a jail term as a condition of probation. The state requests that the sentence be vacated and the case remanded, apparently so that the trial court may be given the opportunity to suspend only a part of the sentence as authorized under La. C.Cr.P. art. 894. Accordingly, the defendant's sentence is vacated and the case is remanded to the district court for resentencing.
ASSIGNMENT OF ERROR NO. 2
We have examined the record and found no errors patent other than the sentencing error specifically assigned and addressed above.
For the reasons stated, the defendant's conviction is affirmed. The sentence is vacated and the case remanded to the district court for resentencing in accordance with the law.
*826 CONVICTION AFFIRMED; SENTENCE VACATED AND CASE REMANDED.
NOTES
[1] As the charge was reduced to a misdemeanor prior to trial, defendant's proper mode of review is by an application for supervisory writs rather than a direct appeal. La. C.Cr.P. art. 912.1(C). However, in keeping with this court's policy of fostering judicial economy, we have decided to consider the matter.