631 So.2d 1288 (1994)
STATE of Louisiana
v.
Darnell HAWKINS.
No. 93-KA-1260.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1994.
Harry F. Connick, Dist. Atty., Karen E. Godail, Asst. Dist. Atty., New Orleans, for appellee.
Patrick J. Costa, New Orleans, for appellant.
Before PLOTKIN, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
Darnell Hawkins was charged by bill of information on August 4, 1992, with attempted second degree murder, a violation of La. Rev.Stat.Ann. §§ 14:27, 14:30.1 (West Supp. 1993). On January 19, 1993, a twelve member jury found the defendant guilty as charged. He was sentenced on March 26, 1993 to serve eighteen (18) years at hard labor. On appeal, the defendant raises three assignments of error for reversal of his conviction and sentence. Concluding that the trial court erred in finding sufficiency of evidence to convict the defendant of attempted second degree murder, we reverse the defendant's conviction and sentence. We *1289 find him guilty of aggravated battery and remand for resentencing.

FACTS
On September 14, 1991 at approximately 1:00 a.m., Gregory Thomas, driving a Chevrolet Astrovan, exited I-10 at Chef Menteur Highway, New Orleans. As he attempted to cross Chef Menteur,[1] he stopped in the median to check for on-coming traffic. When Mr. Thomas proceeded to cross the westbound lanes to enter the Holiday Inn parking lot, his vehicle was struck from the rear by another van. He guided his van into the parking lot and heard gunshots. Looking over his left shoulder, Mr. Thomas observed the defendant walking toward him firing a gun in his direction. Mr. Thomas then reached for his .25 caliber pistol, but replaced it upon seeing that the defendant's weapon was much larger than his own.
As the defendant approached Mr. Thomas' van, Mr. Thomas opened the driver's door and raised his arms to show the defendant that he was unarmed. The defendant reached into the van and, with the pistol in one hand, grabbed Mr. Thomas with the other hand. He then put the pistol to Mr. Thomas' head and stated "I'M GOING TO KILL YOU, MOTHER FUCKER, I'M GOING TO KILL YOU." After hitting the defendant's hand, Mr. Thomas responded "YOU CAN'T KILL ME. I GOT THREE CHILDREN TO RAISE AND MY WIFE IS DEAD, SO YOU CAN'T KILL ME." Thereafter, the defendant began shooting at Mr. Thomas' van. He then walked around the van and began shooting at the back of the van. After the defendant emptied the clip, he walked back to his own van, reloaded the pistol, and returned to Mr. Thomas' van. Seeing the defendant returning with a reloaded gun, Mr. Thomas ran into the Holiday Inn, where he followed the security officer into a back office. The defendant was then seen walking in the direction of the hotel lobby. Mr. Thomas did not hear the defendant in the lobby, but the security officer testified that he heard someone in the lobby, and that he heard a clicking sound, like the "dry firing" of a pistol. Mr. Thomas, the security guard, and the hotel clerk remained in the office with Mr. Thomas until the police arrived a few minutes later.
This account of the events was corroborated by Sue and William Yates, who were guests in the hotel and viewed the events from their fifth floor room; Al Hoffman, who was the security guard at the hotel; and Rod Rideau, who was a tow truck driver on the scene.
Officer Dwight Rouseve testified that when he arrived on the scene, the defendant was pacing up and down the sidewalk in front of the hotel, saying that his mother was going to kill him for wrecking her van. The defendant told the officer that he was involved in a wreck and that, another van pulled up and someone inside began shooting at the victim's van so he ran for cover. Upon investigating the scene, Officer Rouseve found a .45 caliber clip underneath some bushes along the sidewalk of the Holiday Inn, several .45 caliber casings in the area of Thomas' van, and a deformed .45 caliber projectile underneath the victim's van. He further observed several bullet holes all along the driver's side of Thomas' van.
Labrina Daniels, who was in the defendant's van at the time of the accident, testified that she saw the defendant exit the van with a pistol, but saw nothing after that because she and her cousin (who was also in the defendant's van) walked a few blocks away to telephone the defendant's mother about the accident. On cross-examination, Daniels testified that she left the scene when the defendant started shooting.
Charles Heuer, assistant district attorney, screened the case. He charged the defendant with four crimes, none of which were attempted second degree murder.[2] Mr. Heuer testified that after the institution of prosecution, some charges are lowered or raised to other charges, depending upon additional facts which may come to light after the case has been screened.

*1290 DISCUSSION

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the evidence was insufficient to support the conviction of attempted second degree murder, and thus, the trial court erred when it denied his motion for new trial.[3] Specifically, the defendant argues that the State failed to prove that he had the specific intent to kill.
The standard for appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.Rev.Stat.Ann. § 14:30.1 (West Supp. 1993). While a conviction for second degree murder can be obtained by showing that the defendant had the specific intent to kill or inflict great bodily harm, a conviction for attempted second degree murder requires a showing that the defendant had the specific intent to kill and committed an act tending to accomplish that purpose. La.Rev.Stat.Ann. § 14:27 (West Supp.1993); State v. Pittman, 604 So.2d 172 (La.App. 4th Cir.1992), writ denied, 610 So.2d 796 (La.1993); State v. Banks, 496 So.2d 1099 (La.App. 4th Cir. 1986); State v. Strother, 362 So.2d 508 (La. 1978).
Specific criminal intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La.Rev.Stat.Ann. § 14:10(1) (West 1986). Intent may be proven either by direct evidence or can be inferred from the circumstances of the case. State v. Pittman, 604 So.2d at 175; State v. Govan, 593 So.2d 833 (La.App. 4th Cir.1992), writ denied 600 So.2d 654 (La.1992).
The evidence shows that the defendant had numerous opportunities to shoot the victim, but did not. He unloaded two clips of ammunition, one of those was while in close proximity to the victim. Although the defendant initially stated that he was going to kill the victim, he then chose to shoot bullets into and around the victim's van. This was indicative of his intent to damage the victim's property, not kill the victim.
The defendant held the gun to the victim's head, yet did not shoot, or attempt to shoot him. After the victim pushed away the defendant's hand, the defendant fired past him into the van. Such a firing is evidence of anger, but not an intent to kill someone who is standing less than three feet away. The victim, although shaken, remained unscathed.
Viewing the evidence in a light most favorable to the prosecution, no rational trier of fact could conclude that the State proved the essential elements of attempted second degree murder beyond a reasonable doubt.
Having concluded that there was insufficient evidence to convict the defendant of attempted second degree murder, we must next consider whether there was sufficient evidence to convict him of one of the lesser included offenses.
An appellate court may modify the verdict and render a judgment of conviction on a lesser included responsive offense, in lieu of granting a post verdict judgment of acquittal, if the evidence viewed in a light most favorable to the state supports a conviction of a lesser included offense. La.Code Crim.Proc. Ann. art. 821(E) (West Supp.1993); State v. Sean Williams, 625 So.2d 280 (La.App. 4th Cir.1993).
In the instant case, the other responsive verdicts, other than not guilty, include attempted manslaughter and aggravated battery. See Code Crim.Proc.Ann. art. 814 (West Supp.1993).
Manslaughter is defined by La.Rev.Stat. Ann. § 14:31 (West 1986) as:

*1291 (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Aggravated battery is a battery[4] committed with a dangerous weapon. La.Rev.Stat. Ann. § 14:34 (West 1986).
The specific intent to kill is an element of the crime of attempted manslaughter. Since that requisite element is lacking in the instant case, there is insufficient evidence to support a verdict of attempted manslaughter. See, State v. Dean, 528 So.2d 679 (La.App.2d Cir.1988).
Although the evidence adduced at trial is insufficient to support a verdict of attempted manslaughter, it is sufficient to support a verdict of aggravated battery. After the accident, the defendant armed with a gun approached Mr. Thomas' van, reached inside and grabbed him by the shirt. He then put the gun to Thomas' head and threatened to kill him. That constitutes the use of force or violence with a dangerous weapon upon the person of another.
For the foregoing reasons, we reverse the defendant's conviction of attempted second degree murder. We find him guilty of aggravated battery and remand to the trial court for resentencing.
REVERSED AND RENDERED; REMANDED FOR RESENTENCING
WALTZER, J., dissents with reasons.
WALTZER, Judge, dissents with reasons.
The majority holds that viewing the evidence in the light most favorable to the prosecution no rational trier of fact could conclude that the State proved the essential elements of attempted second degree murder, and reaches the conclusion that there is sufficient evidence to return a verdict of guilty of aggravated battery. I respectfully disagree with this assessment.
In my view it is of no moment that the defendant was frustrated, angry and irrational after an accident in which he wrecked his mother's car at 1:00 o'clock in the morning. It also matters not that the defendant had "numerous opportunities to shoot the victim, but did not", and that he "unloaded two clips of ammunition, one of those was while in close proximity to the victim". Certainly the defendant does not get points for making threats to kill and then missing or just wildly shooting and not hitting the victim. The jurors could not see defendant's state of mind or photograph it, but they had the opportunity and obligation to make inferences from the nature of the facts in the case and to apply them to the law as given by the court.
The attempt statute provides that:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA R.S. 14:27.
The second degree murder statute provides: *1292 Second degree murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm; ...
The victim testified that the defendant started to shoot at him in his vehicle, at least 2-3 shots. The defendant put a gun to his head and said: "I'm going to kill you motherfucker; I'm going to kill you". That's when the victim pleaded with him not to kill him and the defendant became angrier, backed off, shot at the truck in the vicinity of the gas tank, on the side and in the back of the car. The defendant also shot at another car. The day after the incident the victim noticed that his finger had been injured, whether from a scuffle over the gun or a grazing bullet is not clear.
One witness testified that the defendant was "shooting in the driver's position". There was testimony that the defendant was shooting in the van. Whole series of shots were heard by those on the scene, of which "seven or eight" hit the victim's car. The hotel security officer testified that the defendant shot up the gas tank, "because there was gas all over the ground". The security guard was asked to speculate whether the defendant shot his gun in anger and about the many unseized opportunities the defendant had to shoot the victim. This witness likewise speculated that the defendant was trying to shoot the victim and that the defendant intended to kill the victim. The record reveals that after the defendant emptied one clip, he pursued the victim into the hotel with gun in hand, and dry-shot the gun. Later he put another clip into the pistol and shot some more outside.
The police officer on the scene noted that there were 5 bullet holes in the van, in the van's left rear fender, left tire, two in the door, along with some toward the rear of the van, all on the driver's side. When the police came on the scene, Hawkins lied to the officer and told him that a van had come up and started shooting.
Defense counsel argues that the State failed to prove specific intent to kill and that the evidence is insufficient to support the conviction in this case. The standard of review for the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984). In order to convict, the State had to prove that the defendant had the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. LSA-R.S. 14:27 and LSA-R.S. 14:30.1. The totality of the circumstances in the record presents evidence sufficient to convict the defendant of the crime of attempted second degree murder. Because of the difficulty of presenting direct evidence as to the defendant's state of mind, the trier of fact may infer intent from the facts and circumstances of a transaction and the defendant's actions. The defendant's protestations that he merely shot in anger and did not intend to kill the victim, simply are not supported by the record.
The jurors were aware of the possibility that they could return responsive verdicts of guilty of attempted second degree murder, guilty of attempted manslaughter, guilty of aggravated battery and not guilty. The jury was free to infer any mitigating factors from the evidence presented at trial. The jury concluded that this was a case of attempted second degree murder. I would affirm this verdict.
NOTES
[1] Chef Menteur Highway is a four lane divided highway.
[2] Mr. Heuer charged the defendant with illegal use of a weapon, criminal damage to property (two counts), and aggravated assault.
[3] Defendant's motion for new trial was denied on March 19, 1993.
[4] A battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another. La.Rev. Stat.Ann. § 14:33 (West 1986).