653 So.2d 715 (1995)
STATE of Louisiana
v.
Darnell HAWKINS.
No. 95-KA-0028.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1995.
*716 Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., Orleans Parish, New Orleans, for appellee.
Patrick J. Costa, New Orleans, for appellant.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
LANDRIEU, Judge.
Darnell Hawkins was charged by bill of information on August 4, 1992, with attempted second degree murder, a violation of La. R.S. 14:27/30.1. On January 19, 1993, a twelve member jury found the appellant guilty as charged. He was sentenced on March 26, 1993, to serve eighteen years at hard labor. Arguing there was insufficient evidence to support the second degree murder conviction, he appealed the conviction. This Court agreed with the appellant and reversed that conviction; this Court further found the appellant guilty of aggravated battery and remanded to case to the trial court for resentencing. State v. Hawkins, 93-1260 (4th Cir. 1/27/94), 631 So.2d 1288, writ denied 94-0301 (La. 6/24/94), 640 So.2d 1341. The appellant was resentenced on September 2, 1994, to serve ten years at hard labor. Contending that the ten year sentence is constitutionally excessive, he now appeals his resentencing.
The facts of this case were set out in the first appeal as follows:
On September 14, 1991 at approximately 1:00 a.m., Gregory Thomas, driving a Chevrolet Astrovan, exited I-10 at Chef Menteur Highway, New Orleans. As he attempted to cross Chef Menteur,[1] he stopped in the median to check for on-coming traffic. When Mr. Thomas proceeded to cross the westbound lanes to enter the Holiday Inn parking lot, his vehicle was struck from the rear by another van. He guided his van into the parking lot and heard gunshots. Looking over his left shoulder, Mr. Thomas observed the defendant walking toward him firing a gun in his direction. Mr. Thomas then reached for his .25 caliber pistol, but replaced it upon seeing that the defendant's weapon was much larger than his own.
As the defendant approached Mr. Thomas' van, Mr. Thomas opened the driver's door and raised his arms to show the defendant that he was unarmed. The defendant reached into the van and, with the pistol in one hand, grabbed Mr. Thomas with the other hand. He then put the pistol to Mr. Thomas' head and stated "I'M GOING TO KILL YOU, MOTHER FUCKER, I'M GOING TO KILL YOU." After hitting the defendant's hand, Mr. Thomas responded "YOU CAN'T KILL ME. I GOT THREE CHILDREN TO RAISE AND MY WIFE IS DEAD, SO YOU CAN'T KILL ME." Thereafter, the defendant began shooting at Mr. Thomas' van. He then walked around the van and began shooting at the back of the van. After the defendant emptied the clip, he walked back to his own van, reloaded the pistol, and returned to Mr. Thomas' van. Seeing the defendant returning with a reloaded gun, Mr. Thomas ran into the Holiday Inn, where he followed the security officer into a back office. The defendant was then seen walking in the direction of the hotel lobby. Mr. Thomas did not hear the defendant in the lobby, but the security officer testified that he heard someone in the lobby, and that he heard a clicking sound, like the "dry firing" of a pistol. Mr. Thomas, the security guard, and the hotel clerk remained in the office with Mr. Thomas until the police arrived a few minutes later.

*717 This account of the events was corroborated by Sue and William Yates, who were guests in the hotel and viewed the events from their fifth floor room; Al Hoffman, who was the security guard at the hotel; and Rod Rideau, who was a tow truck driver on the scene.
Officer Dwight Rouseve testified that when he arrived on the scene, the defendant was pacing up and down the sidewalk in front of the hotel, saying that his mother was going to kill him for wrecking her van. The defendant told the officer that he was involved in a wreck and that, another van pulled up and someone inside began shooting at the victim's van so he ran for cover. Upon investigating the scene, Officer Rouseve found a .45 caliber clip underneath some bushes along the sidewalk of the Holiday Inn, several .45 caliber casings in the area of Thomas' van, and a deformed.45 caliber projectile underneath the victim's van. He further observed several bullet holes all along the driver's side of Thomas' van.
Labrina Daniels, who was in the defendant's van at the time of the accident, testified that she saw the defendant exit the van with a pistol, but saw nothing after that because she and her cousin (who was also in the defendant's van) walked a few blocks away to telephone the defendant's mother about the accident. On cross-examination, Daniels testified that she left the scene when the defendant started shooting.
Hawkins, 631 So.2d at 1289.
The defense argues that the appellant's ten year sentence, the maximum for aggravated battery, is excessive because there was no finding of intent to kill or to cause bodily harm since the appellant did not shoot or shoot at the victim.
The defendant was sentenced under La. Rev.Stat.Ann. § 14:34 (West 1986), the aggravated battery statute, which provides for a term of not more than ten years. According to the sentencing guidelines, a first offender convicted of aggravated battery would receive a sentence of thirty-six to sixty months.
At the sentencing hearing in the case at bar, the trial court acknowledged its review of the sentencing guidelines and provided an explanation for deviating from its recommended sentence. The trial court stated:
The Court is aware of the guidelines, of the sentencing guidelines, on an aggravated battery. However, we are going to ... being aware of it, being aware of the requirements for sentencing, we are going to deviate from those guidelines, for the following reasons: The Court is going to sentence the defendant to serve ten years in the Department of Corrections, giving him credit for time served. We feel that any lesser sentence would deprecate the seriousness of the offense, cheapen life as we know it. Certainly, I believe that is one of the singular problems in this city, with .9 millimeter [sic] and dead black males. That is the Number 1, in my opinion, cause. Why we don't have another statistic involved in this case, only God knows; only God knows. I know that twenty-five years ago, thirty years ago, somebody would get in an accident and then get outside and fists would be thrown. And somebody would go home with a black eye or a loose tooth. Now, .9 millimeter clips are being emptied, two of them. The Court believes that the defendant is definitely in need of incarceration in a facility. He obviously has a temper. If it is not demonstrated by what was said, certainly by the two clips of .9 millimeter slugs.
(Sentencing transcript, pp. 6-7).
Here, the trial court chose to deviate from the sentencing guidelines noting as an aggravating circumstance the fact that the appellant emptied two clips of .9 millimeter bullets first into the victim's van and while chasing the victim.
The defense argues that even though the "defendant's conduct was reckless, terroristic, and outrageous," it does not fit the definition of aggravated battery because there was no finding of intent to kill or to cause bodily *718 harm.[2] However, the statutes[3] under which the appellant was sentenced require the objective showing of "the intentional use of force or violence upon the person of another" "committed with a dangerous weapon" not the subjective intent to kill or cause bodily harm. As this Court declared in its determination that the evidence supported aggravated battery:
the defendant armed with a gun approached Mr. Thomas' van, reached inside and grabbed him by the shirt. He then put the gun to Thomas' head and threatened to kill him. That constitutes the use of force or violence with a dangerous weapon upon the person of another.
Hawkins, 631 So.2d at 1291.
The defense argues that the maximum sentence was imposed because the trial court believed that the appellant intended to kill the victim. This contention is irrelevant; the trial court stated that the sentence was imposed because the appellant fired two rounds of .9 millimeter bullets from an assault weapon at the victim and his van, which clearly demonstrated the requisite use of force with a dangerous weapon upon the person of another. The trial court's finding of such aggravating circumstances supports the imposition of the ten year sentence.
We are not persuaded that this sentence is grossly out of proportion to the severity of the crime or is "nothing more than a purposeless and needless imposition of pain and suffering" such as to make it constitutionally excessive. State v. Telsee, 425 So.2d 1251 (La.1983). The complete lack of regard for the safety of the victim or others in the vicinity of the crime scene evidences that this defendant is the worst kind of offender, and deserving of the maximum sentence under the statute. We therefore conclude that considering the aggravating circumstances surrounding this crime, the sentence is appropriate and not constitutionally excessive. State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991), writ denied 577 So.2d 1009 (La.1991). For the foregoing reasons, the sentence is affirmed.
AFFIRMED.
NOTES
[1] Chef Menteur Highway is a four lane divided highway.
[2] The defense also concedes that the "defendant grabbed the victim, uttered vile threats, damaged the victim's property by firing numerous shots into the van, reloaded the weapon and then chased an extremely frightened man into the Holiday Inn." (Defense brief, unnumbered p. 3).
[3] La.R.S. 14:33 defines battery as the "intentional use of force or violence upon the person of another;" La.R.S. 14:34 defines aggravated battery as "a battery committed with a dangerous weapon."