722 So.2d 1097 (1998)
STATE of Louisiana
v.
David J. RAINEY.
No. 98-KA-436
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1998.
*1099 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Rebecca J. Becker, Richard C. Bates, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Martin E. Regan, Jr., New Orleans, Louisiana, Attorney for Defendant/Appellant.
Before H. CHARLES GAUDIN, EDWARD A. DUFRESNE, Jr. and SOL GOTHARD, JJ.
GOTHARD, Judge.
On August 19, 1997, the Jefferson Parish District Attorney filed a bill of information charging the defendant, David Rainey, with attempted second degree murder in violation of LSA-R.S. 14:27:30.1. He was arraigned and entered a plea of not guilty. Accordingly, a jury trial was conducted after which the defendant was convicted of aggravated battery. In due course he was sentenced to serve eight years at hard labor. The defendant filed for and was granted a timely appeal. For reasons that follow, we affirm.
In reaching the responsive verdict, the jury considered testimony from various witnesses. According to that testimony, the incident which forms the basis of the charge against the defendant arose from a confrontation between Rainey and Gordon Scott Parker which occurred on April 6, 1997. At that time Rainey was living with his girlfriend, Angela Kerlic, her three children, and Angelique Kelly and her minor son in an apartment in Metairie. Kelly and Parker had a relationship which ended a few weeks prior to the incident. Parker came over to the apartment at about 8 p.m. on the evening of April 6th to make an attempt at reconciliation with Kelly. After Kelly refused Parker's proposal of reconciliation, Parker and Rainey left the apartment to go to a bar. They returned about four hours later. Parker again tried to convince Kelly to reestablish their relationship. The couple argued outside the apartment. The argument escalated and Parker slapped Kelly. She ran into the apartment and was followed by Parker. The acrimonious discussion continued in the dining room until Parker pushed Kelly against a wall, causing her to fall to the floor. Parker got on top of her and was about to punch her when the defendant, Rainey, intervened.
At this point Kelly ran out of the room and the two men continued to fight. Kerlic came downstairs and saw Kelly crying. Kerlic testified that she heard yelling and banging sounds from the dining room. She heard Rainey say "You will never lay your hands on another woman in front of me again". He keep saying "tell me you understand". She heard no response from Parker.
When Kerlic went into the dining room, Parker was lying on the floor. Rainey was sitting on top of his stomach, banging Parker's head on the floor. Parker's arms were limp and he was not moving. Kerlic called out Rainey's name and told him to stop. Rainey looked up and stopped pounding Parker's head into the floor momentarily. Then he turned back to Parker and began to punch him in the face. Kerlic grabbed Rainey's arm and told him to stop. She was able to get him over to the other side of the room and tried to calm him down, to no avail. Rainey walked up to Parker and kicked him in the head a few more times before Kerlic *1100 could pull him away again. Rainey went back again and kicked Parker, yelling "wake up, you you're not dead yet". Kerlic again pulled Rainey away, but he went back to kick Parker about three more times.
Kerlic testified that Parker remained in the same position the entire time. He did not move and appeared to be unconscious. Kerlic was finally able to get Rainey outside, at which point she called 911. While waiting for help to arrive she went to see about Parker, who was bleeding profusely and breathing irregularly. He was moaning, but did not appear to be awake.
Parker was taken by emergency medical personnel to a nearby hospital where he was treated by Dr. William Johnston, Jr., a neurosurgeon. Dr. Johnston treated the victim from date of assault on April 6, 1997 until August 27, 1997, when he was released from outpatient care. When Parker arrived at the hospital shortly after the incident, he was unconscious with evidence of multiple blows to the head, fractured jaw and significant brain injury. A CAT scan demonstrated a contusion or bruising of the brain with a small amount of bleeding inside the head under the surface of the brain. Parker remained in the intensive care unit in a semicomatose condition for many days. When his level of consciousness did not improve after his first few days in the hospital, Dr. Johnson placed an inter-cranial pressure monitor, a hollow screw into his skull, to track the pressures in his head. His condition stabilized after about a week and he was able to leave the intensive care unit. He remained hospitalized for a total of one month.
Dr. Johnson testified that his discharge diagnosis was that of a saburral contusion, bruising or injury of the brain, with some bleeding into the head. The patient also sustained a fractured jaw bone which required a surgical correction. For the first four or five days his condition was critical. Afterward, the situation was controlled and the condition was serious, but not life threatening. Dr. Johnson stated that the injuries were consistent with blows and kicks to the top of the head. The prognosis was good for his continued survival and neurological stability; but Parker still has significant neurological symptoms. He has problems with memory and language function. He also has some difficulty with double vision, which was a direct result of the trauma to his head and face. Dr. Johnson opined that these brain malfunctions may be permanent.
The jury also heard testimony from the victim who testified that he had no recollection of the events of the night of April 6, 1997. He testified that he knew the defendant and Angel Kelly. He met Kelly before Thanksgiving 1996 and dated her for about 6-7 months. He testified that he does not remember ever having a physical altercation with Kelly. Parker testified that he wanted to resume the relationship with Kelly, but does not remember going to her apartment on the evening of April 6, 1997. He stated that he has trouble with his memory since the incident.
Angel Kelly testified that she dated Parker from August, 1996 until March, 1997. Although they argued occasionally and he pushed her once, he was not violent towards her. She gave testimony which is consistent with other testimony about the beginning of the altercation between Rainey and Parker. She verified that Parker was about to punch her when Rainey intervened. She stated that she ran out of the room at this point and did not go back in until the police arrived. She saw nothing of the ensuing events which took place between Rainey and Parker.
The jury also heard an audiotape statement made by the defendant during the investigation of the incident. In that statement Rainey said that Parker picked him up at about 9 p.m. on the evening of April 6, 1997 and they went out to shoot pool and have a few drinks. Shortly before midnight as they returned to Rainey's apartment, Parker said he wished Kelly would give him another chance. The two men discussed the relationship and the possibility of a reconciliation. After they arrived at Rainey's apartment, Parker and Kelly began to argue. Rainey suggested he and Parker "take a walk outside". Kelly went outside and shortly afterward ran back into the apartment. Parker chased her into the dining room and pushed her down on the floor. Rainey grabbed Parker and swung him around causing *1101 him to hit the wall face first. Parker turned around and hit Rainey in the left eye, and the fight continued. Although Rainey admits to punching and kicking Parker numerous times, he maintains that Parker was conscious the entire time and was fighting back.
In brief to this court, the defendant assigns four errors for our review. In the first, he challenges the trial court's decision to allow the jury to hear the audiotape made of the defendant's statement. In his argument, the defendant maintains the tape should not have been played for the jury because it was not provided to the defense in accordance with proper discovery procedures. The record shows that the defense was given "open file" discovery which contains a transcribed copy of the statement. The defense admits it was provided with a copy of the transcript about two weeks before trial, but argues that use of the actual tape at trial was prohibited by LSA-C.Cr.P. art. 716.
LSA-C.Cr.P. art. 716 obligates the state, on defense motion, to produce any statements or confessions made by the defendant in connection with the case that are within the possession or knowledge of the prosecutor, and that are intended for use at trial. In the event of a discovery violation, the court has the discretion to permit the discovery of the undisclosed material, order a mistrial, grant a continuance, prohibit the introduction of the undisclosed material, or any other order, except dismissal, that is appropriate. LSA-C.Cr.P. art. 729.5. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court's adverse ruling on the motion for a mistrial. State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50.
In the instant case, the record reflects that the defendant filed a motion for criminal discovery in which he requested, "any and all statements, written or verbal, recorded or not recorded, made by or obtained from the defendant". On the morning of trial, the state filed a notice of intent to use the taped statement of the defendant at trial, and asked to play for the jury the audiotape of that statement. The defendant objected to the tape being played on the basis that it would be too time consuming, and because he "didn't know what was on the tape". At a bench conference on the matter, defense counsel admitted that he had been provided with a copy of the transcript of the taped statement approximately two weeks before trial.
On appeal, the defendant argues that the trial court's admission of the actual audiotape, constituted reversible error because of a discovery violation by the prosecution. He makes no argument that the contents of the audiotape and the transcript made from the tape differ. Both are contained in the record, and the typed transcript is an accurate depiction of the contents of the audiotape.
Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the state's case, and to allow a proper assessment of the strength of its evidence in preparing a defense. LSA-C.Cr.P. arts. 716-729; State v. Toomer, 395 So.2d 1320 (La. 1981). When the defendant is lulled into a misapprehension of the strength of the state's case through the prosecution's failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686, 688. This court has held that admitting evidence without prior discovery, under LSA-C.Cr.P. art. 716(B), will not constitute reversible error if harmless. State v. Grant, 517 So.2d 1151 (La.App. 5 Cir.1987); State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103.
The defendant, prior to trial, pursuant to his discovery motion, was provided a transcript of the exact contents of the tape and made aware that the prosecution would be using that statement at trial. It is difficult to see how the use of the audiotape with the same contents would have "lulled the defendant into a misapprehension of the case" State v. Allen, supra. The defendant argues that "he was prejudiced in his trial strategy *1102 by the later than eleventh hour disclosure of the audiotape", and that the audiotape "neutralized the impact of his own testimony, if, as expected the jury was only to read his statements." However, the defendant offers no support for this allegation. Accordingly, we find no error which caused prejudice to the defendant in the trial court's admission of the tape. See, State v. Durham, supra.
In his second assignment, the defendant argues that the trial court committed reversible error by using erroneous instructions to charge the jury on the issues of intent and the burden of proof for defense of others. Specifically, he objects to the instruction on intent and the burden of proof to show that the use of force or violence was justified. Because this assignment relates to the next assignment, which questions the sufficiency of the evidence used to convict the defendant based on his argument that the state did not meet its burden of proof, we will combine the discussion of these two assignments.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). See also State v. Mussall, 523 So.2d 1305 (La.1988).
In Jackson, the court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Under Jackson a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d at 1310 (La.1988).
Although the defendant was originally charged with attempted murder, a violation of LSA-R.S. 14:27:30.1, the jury found the defendant guilty on the lesser charge of aggravated battery, a violation of LSA-R.S. 14:34, which defines aggravated battery as "a battery committed with a dangerous weapon". Battery is defined in pertinent part by LSA-R.S. 14:33 as "the intentional use of force or violence upon the person of another". To support a conviction of aggravated battery the state has the burden to prove three elements: 1) that the defendant intentionally used force or violence against the victim, 2) that the force or violence was inflicted with a dangerous weapon, and, 3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Munoz, 575 So.2d 848, 850 (La.App. 5 Cir.1991).
The dangerous weapons alleged by the state in the instant case were the defendant's boots. An instrumentality may be a "dangerous weapon" not solely because of the inherent danger it poses, but also because the instrumentality is used in a manner likely to result in death or grave bodily harm. LSA-R.S. 14:2; State v. Bonier, 367 So.2d 824 (La.1979). The dangerousness of the instrumentality because of its use is a factual question for the jury to decide. State v. Murff, 215 La. 40, 39 So.2d 817 (1949).
As to that portion of defendant's argument regarding the jury charge, we note that the standard of review requires that the charges be read as a whole. A verdict will not be set aside because of an objection to a portion of the trial court's charge unless such portion, when considered in connection with the remainder of the charge, is shown to be erroneous and prejudicial. State v. Broussard, 202 La. 458, 12 So.2d 218, 220 (La. 1942). A trial court charges a jury by presenting to the jury his entire instructions. Thus, any appellate review should always consider the entire presentation. State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, writ denied, 96-2543 (La.9/19/98), 701 So.2d 153; State v. James, 95-566 (La. App. 5 Cir.1995), 665 So.2d 581, 583.
*1103 In the instant case the trial court charged the jury that the defendant must prove, by a preponderance of the evidence, that the use of force or violence was justified for the defense of himself or another. Defendant argues that it is the state, not the defendant, which has the burden of proof in cases of self defense, or defense of another. The defendant asserts that, in order to meet that burden the state must show that the defendant's actions were not justified for the protection of himself and/or Kelly. Accordingly, the jury instructions improperly shifted the burden of proof from the state to the defendant.
Additionally, the court added the instruction that the jury, "may infer that the defendant intended the natural and probable consequences of his acts". Defendant argues that instruction created a presumption which abridges the holding in the United States Supreme Court's decision in Sandstrom v. Montana, 442 U.S. 510, 513, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), thereby shifting the burden from the state to the defendant. Defendant argues that this type of instruction violates the requirement that the state prove each element of the offense beyond a reasonable doubt as set forth in the Fourteenth Amendment.
The defendant in the instant case claimed that he committed the battery of the victim while acting in the defense of another, Angel Kelly. Defense of another is governed by LSA-R.S. 14:22 which states:
It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.
The use of force or violence in defense in a non-homicide situation is governed by LSA-R.S. 14:19, which states:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Louisiana jurisprudence has commonly held that, in a homicide context, when a defendant claims self-defense, or defense of others, the burden remains upon the state to prove that the defendant did not act in self defense. State v. Batiste, 96-1010 (La.App. 5 Cir. 1/27/98), 708 So.2d 764; State v. Garcia, 483 So.2d 953, 956 (La.1986).
In State v. Freeman, 427 So.2d 1161, 1163 (La.1983), the Louisiana Supreme Court indicated, in dicta, that the defendant in a nonhomicide case may have the burden of proving self-defense by a preponderance of the evidence. The Freeman court stated that "in the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary." Freeman at 1163. The Freeman court admitted that there was apparently no Louisiana jurisprudence distinguishing the burdens of persuasion applicable to self-defense in homicide and non-homicide situations. However, the court did not address the issue, and concluded that:
The burden of persuasion in proving selfdefense in a non-homicide situation pursuant to La. R.S. 14:19, which entails a subjective as well as an objective inquiry, could arguably, in fairness to the State, be upon the defendant since a subjective inquiry is involved.
We need not, however, in this case, definitively resolve this narrow legal issue, for irrespective of who bears the burden in this case, and even assuming that the State has the burden of proving beyond a reasonable doubt in this non-homicide situation that defendant did not act in selfdefense, we conclude that the State has carried its burden of proof.

Freeman, 427 So.2d 1161,1163.
The Supreme Court has not addressed this issue since Freeman, and a review of the relevant jurisprudence reveals that the circuits are split on the issue. In State v. *1104 Barnes, 491 So.2d 42 (La.App. 5 Cir.1986), this burden of proof issue was raised by an objection to a jury instruction, as it was in this case. This court citing State v. Cheatwood, 458 So.2d 907 (La.1984), reasoned that self-defense or defense of others is similar to the type of affirmative defenses discussed in Cheatwood, and held that in a non-homicide case, the burden to prove self-defense, or defense of another by a preponderance of the evidence shifts to the defendant. In Barnes we stated:
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by preponderance of evidence the exculpatory circumstances constituting the `affirmative' defense. See W. Lafave & A. Scott, Criminal Law [Section] 8 (1972). The statutory provisions setting forth the state's burden of proof refer only to the requirement that the state prove the elements of the crime-not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense. See LSA-R.S. 15:271; LSAC.Cr.P. Art. 804; former LSA.C.Cr.P. Arts. 263 and 387 (1928). See also State v. Freeman, 427 So.2d 1161 (La.1983), Lemmon, J., concurring.
In the non-homicide case of aggravated battery there can be no doubt that none of the essential elements of the offense required to be proved by the state are involved and under Louisiana law we feel that affirmative defenses should be established by the defendant by a preponderance of the evidence. Cheatwood, supra at 910 N. 4. We therefore agree with the Cheatwood Court that the Louisiana legislature intended to require the state to prove only the essential elements of the offense and to require the defendant to prove the exculpatory circumstances by a preponderance of the evidence.
...
This court holds that a defendant in a non-homicide case in Louisiana has the burden of production as well as the burden of persuasion when self-defense or defense of another is asserted as a defense. We feel that self-defense and defense of another are affirmative defenses similar to the insanity and entrapment defenses. Furthermore, there is an additional reason for this court holding that a defendant in a non-homicide case in Louisiana has the burden of persuasion as well as of production when self-defense or defense of another is asserted as a defense. As stated in Freeman, supra, "[i]n the non-homicide situation, the defense of selfdefense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary [footnote omitted]". State v. Ford, 368 So.2d 1074 (La.1979); State v. Guinn, 319 So.2d 407 (La.1975). Thus, since the subjective inquiry is required, it is the defendant who would be in a better position to know those subjective facts. In fairness to the state this court believes that it would be placing an onerous burden on the state to disprove subjective influences on the defendant as it relates to self-defense or defense of another especially since the defendant has these facts at his disposal to produce to the court.
Therefore, this court holds that the jury charge given by the trial judge in this nonhomicide case correctly placed the burden of proving self-defense or defense of another by a preponderance of the evidence on the defendants and we find the assignment lacks merit.

Barnes, 491 So.2d at 47.
The Third Circuit appears to be in agreement with our view, holding that the defendant has the burden of proving self-defense in a non-homicide by the preponderance of the evidence. State v. Hall, 606 So.2d 972, 976 (La.App. 3 Cir.1992), writ denied 644 So.2d 385 (La.1994). See also, State v. Joubert, 97-1093 (La.App. 3 Cir. 2/4/98), 705 So.2d 1295.
We recognize that the Fourth Circuit, in State v. Fluker, 618 So.2d 459, 463 (La.App. 4 Cir.1993), disagreed with Barnes stating:

*1105 [T]he statutes which provide for exculpatory circumstances, like justification, do not provide any indication that the defendant bears the burden of proving that his act falls under one of those provisions. LSA-R.S. 14:18, 14:19, and 14:20. We see no distinction between these provisions, and fail to see why the State would have the burden of disproving in one situation (homicide), and why the defendant would bear the burden of proving in another (nonhomicide). Absent a clear direction from our legislature, we feel that the defendant should not have the burden of proving anything.
In State v. Agnelly, 515 So.2d 821, 823 (La.App. 5 Cir.1987) this court stated:
We find it unnecessary in the present case to predicate our decision on the precise holding in Barnes, for the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact either that the defendant failed to prove by a preponderance of evidence that he acted in self-defense or that the state proved beyond a reasonable doubt that the defendant did not act in self defense.
We find that in the instant case, as in Agnelly, our decision does not require a consideration of Barnes. The defendant argues that the evidence was insufficient to convict him of aggravated battery because the state failed to prove that he was not acting in the defense of Kelly. That argument is also made in depth in the second assignment which relates to the jury charges. The defendant argues that his intervention was necessary to protect Kelly, and that he "chivalrously prevented Ms. Kelly from receiving a facial beating by a drunken, lovesick, maniac". However, the record reflects that after initially pulling the victim away from Kelly, the defendant continued to batter the victim long after Kelly had left the room relatively unharmed. The overwhelming testimony as detailed above shows that the force used was well beyond anything reasonable for the protection of Kelly. The medical testimony which establishes the extent of the victim's serious injuries further supports the jury's finding. It is not difficult to see how a rational trier of fact could find that a defendant was not justified in continuing to batter an unconscious man under the guise of protecting a woman who was not even present in the room. Further, we find no error in the jury's determination that Rainey's boots were used as "dangerous weapons" within the meaning of LSA-R.S.14:34. For these reasons we find that the defendant failed to prove by a preponderance of evidence that his actions were justified for the defense of Kelly. Thus, any shifting of the burden, even if improper, is irrelevant to our consideration.
Nor are we persuaded that the portion of the jury charge which allowed the jury to infer that the defendant intended the results of his actions is reversible error. The Louisiana Supreme Court addressed the same issue in State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 254-55, cert. denied, ___ U.S. ___, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996) stating:
Defendant contends that the trial court improperly instructed the jury in the guilt phase that it "may infer that the defendant intended the natural and probable consequences of his acts." He argues that he objected to this instruction at trial on the ground it created an improper presumption under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
In Sandstrom, the Court held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. In State v. Copeland, 530 So.2d 526, 539 (La.1988), we stated:
The mere use of the word "presume" raises the spectre of a Sandstrom-type problem. For that reason, the preferable instruction is "... you may infer that the defendant intended the natural and probable consequences of his acts ..." (emphasis in original).
In the instant case, the trial judge's instruction follows the language we approved *1106 in Copeland [530 So.2d 526, 539 (La. 1988) ]. Clearly, the instruction does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, this instruction was not erroneous.
The defendant attempts to distinguish the instant case from Mitchell by stating that he may not have intended the consequence of his actions due to the "spontaneous action necessary to save Ms. Kelly," and therefore the presumption created by the intent instruction denied him a fair trial. However, since the defendant committed the battery largely while Ms. Kelly was not even in the room we do not distinguish it from Mitchell. This assignment is without merit.
In his final assignment of error the defendant alleges that his sentence is excessive in light of the facts that he is a first felony offender, he acted in defense of another and the victim was the aggressor. The record reflects that the defendant failed to make either an oral motion, or a written motion for reconsideration of sentence as required by LSA-C.Cr.P. art. 881.1. However, he did note an objection to the sentence at the time it was imposed. While the failure to file a motion to reconsider sentence precludes a defendant from raising specific grounds for reversal of a sentence, it does not necessarily preclude a challenge to the constitutionality of that sentence. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212. Thus, out of an abundance of caution, this court will consider the defendant's challenge to the constitutionality of the sentence. See also; State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97); 694 So.2d 440; State v. Allen, 93-838 (La.App. 5 Cir. 5/31/94), 638 So.2d 394; State v. Henderson, 94-286 (La. App. 5 Cir. 12/14/96), 648 So.2d 974.
The crime of aggravated battery carries a possible sentence of a $5,000.00 fine and up to ten years in prison or both. LSA-14:34. As previously stated, defendant herein was ordered to serve eight years at hard labor.
The Louisiana Constitution in Article 1, Section 20, prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983). A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993). When reviewing a judge's sentencing discretion this court should consider: 1) the nature of the crime, 2) the nature and background of the offender, and, 3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Smith, 520 So.2d 1252 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1320.
Upon sentencing the defendant in this case the trial court stated:
... I heard the evidence. I heard the beating described by an expert medical physician, thank goodness, a good doctor, because he saved Mr. Parker's life. And as damaged and battered as his life will be for the rest of his life at least he's going to live. And for that reason Mr. Rainey's sentence will be shorter than it could have been. So enough said.
Mr. Rainey, you're going to serve eight years at hard labor with the Department of Corrections and even though I don't think I have the authority to control when you get out I will certainly sign any documents instructing the Department of Corrections that if you're released early that you should not have any contact with Mr. Parker or any members of his family.
Immediately after the trial court pronounced sentence, the prosecution asked the trial court to deny the defendant the benefits of the good time statute, which request the trial court refused.
*1107 The defendant argues that his sentence was excessive because he was acting in selfdefense and because he was a first time felony offender. We have discussed the merits of defendant's assertion that his actions were justified because they were in defense of Kelly and found them to be lacking. Thus, we are not persuaded by his argument as it relates to the sentence.
In a factually similar case, this court upheld a ten year sentence for aggravated battery where the defendant punched the victim in the head and kicked the victim several times, leaving him in a coma. State v. Munoz, 575 So.2d 848 (La.App. 5 Cir. 1991), writ denied, 577 So.2d 1009 (La.1991). Further, this court has routinely upheld more stringent maximum ten year sentences for aggravated battery[1]. In light of the victim's extensive injuries, and the fact that the defendant was charged with more serious crimes for which he could have been exposed to harsher penalties, we find that the trial court did not abuse its discretion by imposing an eight year sentence.
In brief to this court, the state points out two errors patent on the face of the record. In the first, the trial court failed to inform the defendant of the prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8(C). While the failure to comply with this article is patent error, it does not require reversal. It is ordered that the trial court send written notice of the prescriptive period to defendant within ten days of the rendering of this opinion, and to file written proof in the record that defendant received such notice.
The state also asserts that the trial court failed to give the defendant credit for time served in accordance with LSA-C.Cr.P. art. 880. A review of the record reflects that, although the commitment reflects that the defendant was given credit for time served, the sentencing transcript indicates that the trial court failed to grant him such credit. However, the legislature has reenacted article 880 to make the credit for prior custody self-operating. Thus, it is no longer necessary for this court to amend the defendant's sentence to reflect credit for time served.
For the foregoing reasons, the defendant's conviction and sentence are affirmed; and the matter is remanded to the trial court for the trial judge to inform the defendant of the delays for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8.
AFFIRMED WITH ORDER.
NOTES
[1] See, e.g., State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065 State v. Head, 556 So.2d 161 (La.App. 5 Cir.1990), writ denied, 561 So.2d 98 (La.1990), (defendant assisted in preparation of Drano-laced substance which was thrown by defendant's companion into face of victim); State v. Kafieh, 590 So.2d 100 (La.App. 5 Cir.1991), writ denied, 625 So.2d 1053 (La. 1993), (defendant stabbed victim twice, in the presence of victim's three children); State v. Jones, 94-383 (La.App. 5 Cir.10/25/94), 645 So.2d 773, (defendant hit victim in the face with a glass bottle, causing extensive damage to his right eye). The Fourth Circuit has also upheld maximum sentences for first time offenders. See, e.g., State v. Hawkins. 95-0028 (La.App. 4 Cir. 3/29/95), 653 So.2d 715 (defendant shot an automatic pistol into victim's van).