625 So.2d 280 (1993)
STATE of Louisiana
v.
Sean WILLIAMS.
No. 92-KA-2081.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1993.
Harry F. Connick, Dist. Atty. of Orleans Parish, Val M. Solino, Asst. Dist. Atty. of Orleans Parish, New Orleans, for appellee.
George A. Guidry, New Orleans, for appellant.
PLOTKIN, JONES and LANDRIEU, JJ.
JONES, Judge.
The defendant, Sean Williams was convicted of second degree murder and sentenced to serve life imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence. The defendant appeals his conviction urging as his sole assignment of error that the evidence was insufficient to sustain a conviction of second degree murder. For the reasons assigned below, we reverse and vacate the defendant's conviction.

STATEMENT OF THE FACTS
At the trial of the case, the State presented the testimony of four witnesses. The first was the forensic pathologist, Dr. Richard Tracy. Dr. Tracy testified that the victim, Kim Williams, died from a single gunshot wound to the head, and the shot was fired from a distance of approximately six inches. The bullet entered the front of the head and lodged in the rear of the skull.
The second witness for the State was Sheila Williams, the sister of the victim. Ms. Williams testified that she lived in the apartment next to her sister and was inside of the apartment when she heard a gunshot. The victim's children said "Momma's been shot," and Ms. Williams ran outside. She saw the victim sitting up and leaning on the fence. She saw no one else outside and prior to the gunshot heard no one outside. Ms. Williams turned to go inside to telephone the police, when the defendant, the victim's husband, came up behind her and said "Sheila, Kim shot herself. Sheila, Nick tried to rob me and I went to shoot him and Kim got in the way." The defendant opened the door for her and they went inside to call the police, *281 but got no answer. Ms. Williams testified that the defendant looked upset and wanted to take the victim to the hospital. The defendant carried the victim inside the apartment and laid her on the bed. The defendant then went into another room and changed his shirt while asking Ms. Williams to listen for the victim's heartbeat. Ms. Williams told the defendant that she did not know if the victim's heart was beating. The defendant then picked the victim up, put her in the car, and along with the victims's sister took her to the hospital. Ms. Williams testified that there were no lights in the backyard, and the victim was taken to the same bedroom where bullets were later found.
The third witness to testify for the State was Tommy Williams, the father of the victim. Mr. Williams testified that he saw the defendant at the hospital. The defendant told Mr. Williams that Nick, a friend of Mr. Williams, shot the victim. The defendant said "I didn't do it. I didn't do it. Nick did it." Mr. Williams testified that he located a gun in a vacant lot behind the residence approximately sixty feet away. The gun was not loaded and he gave the gun to Detective Rice. Mr. Williams testified that the defendant was upset at the hospital.
The final witness for the State was Detective John Rice who was assigned to investigate the homicide. The Detective arrested the defendant a couple of hours after the murder and took him to the police station for questioning. The defendant told the Detective that he was standing by the rear gate when Nick walked up, and the two fought over the defendant's gun. Nick took the gun away from the defendant, shot the defendant's wife, then fled the scene with the gun.
The State then rested.
The defense called only one witness, the defendant. The defendant testified that he has a prior conviction for aggravated battery. The defendant stated that he and his wife went outside and were playing with the gun because his wife wanted to learn how to shoot it. The defendant stated that the mood was jovial. The victim pointed the gun into the air and tried to shoot it, but stated that the trigger was too hard to pull. The defendant then took the gun and wanted to go back into the house because the two were planning to go out that evening. The victim said "give me the gun" and grabbed the barrel of the gun swinging it towards her. The gun discharged and fell on the ground.
The defendant stated that he borrowed the gun from a friend because a few days earlier Nick had robbed him and his wife, and the gun was for his wife to use as protection. The defendant further testified that he did not tell Mr. Williams, the father of the victim, or the police officer that Nick shot the victim. He tried to tell both men the story about Nick having robbed him and his wife, but neither of the men wanted to hear that. The defendant stated that he took his wife to the hospital because he wanted to see her live.
The defendant admitted having the gun and holding it with the victim. He denied changing his shirt, and explained that he had an undershirt on because he had showered earlier and simply put on a shirt over his undershirt. The defendant further stated that the guy who helped carry the victim to the car, picked up the gun and tossed it into the vacant lot.

DISCUSSION AND LAW
A review of the record for errors patent reveals none.
In his sole assignment of error, the defendant alleges that the evidence was insufficient to sustain a conviction of second degree murder.
An insufficient evidence claim is reviewable under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Pursuant to Jackson, id., the test for deciding insufficient evidence claims is whether the State produced sufficient evidence of guilt so that any rational trier of fact, when viewing the evidence in a light most favorable to the State, could have found that the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, supra.
The defendant was convicted of second degree murder pursuant to La.R.S. 14:30.1(A)(1), which defines second degree murder as the killing of a human being when the *282 offender has a specific intent to kill or inflict great bodily harm.
Thus, the elements which must be proven at trial are that 1) a human being was killed and 2) at the time of the killing, the offender had the specific intent to kill or inflict great bodily harm.
In this case, the fact that the victim died as a result of a single gunshot is not disputed. The defendant argues, however, that the element of specific intent to kill or inflict great bodily harm was not proven at trial.
La.R.S. 14:10 defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Thus, the State must show that the defendant actively desired the death of, or bodily harm to, the victim.
Because of the difficulties of finding direct evidence of a state of mind, a jury may properly infer intent from circumstantial evidence which excludes every reasonable hypothesis of innocence. La.R.S. 15:438.
In this case, the only direct evidence which links the defendant to the killing is the testimony of the defendant; and he testified that the killing was an accident. The defendant was convicted based upon circumstantial evidence. That circumstantial evidence must exclude every reasonable hypothesis of innocence, and it does not.
There are three circumstances in this case from which the jury could have drawn an inference of a specific intent to kill. The first is that the victim was shot in the head at close range. Numerous cases have held that specific intent to kill may be inferred when a wound is inflicted at close range or when a weapon is pointed directly at the victim. However, in all of those cases, unlike this one, there was other evidence of arguments between the victim and defendant, provocation of some sort, or direct eye witness testimony of the event or circumstances surrounding the event.
In State v. Bell, 471 So.2d 277 (La.App. 4th Cir.1985), the defendant was convicted of second degree murder. Testimony revealed that one month before the shooting of the victim, the defendant appeared at the victim's home, produced a gun and stated that he had something for the victim, then shot the victim's mother. This Court held that specific intent to kill could be inferred from those circumstances.
In State v. Shannon, 531 So.2d 1113 (La. App. 4th Cir.1988), writ denied, 600 So.2d 632 (La.1992), the defendant was convicted of second degree murder. In that case, the victim's son testified that the defendant brandished a shotgun and shot the victim in the foot. The victim fell to the ground and the son was then removed from the room by an older brother. Immediately thereafter another shot was heard. The victim died of a gunshot wound to the back which was inflicted after she fell to the ground. There was further testimony that two weeks earlier, the defendant and the victim had an argument wherein the defendant stabbed the victim. This Court held that the specific intent to kill, required for second degree murder, could be inferred from the fact that the defendant shot the victim twice, the second time in the back from a very close range.
In State v. Noble, 425 So.2d 734 (La.1983), the defendant was convicted of second degree murder, and the Court held that from the fact that the defendant shot the victim in the head at close range, it could be inferred that he actively desired death to follow. In Noble, witnesses inside the home testified that the defendant came home and became upset because his sisters had not cooked any food. The defendant watched television for a short while then went outside and ran around the house two or three times. He repeated this behavior several times, then came inside, removed a shotgun from the wall rack and shot the victim at close range.
In State v. Ducre, 596 So.2d 1372 (La.App. 1 Cir.1992), writ denied, 600 So.2d 637 (La. 1992), the defendant and the victim were at a lounge and had an argument. The defendant left the bar, returned with a gun and shot the victim. The appellate court affirmed the second degree murder conviction, and held that the fact that the victim was shot in the chest at fairly close range indicated specific intent to kill or inflict great bodily harm.
*283 In State v. Maxey, 527 So.2d 551 (La.App. 3 Cir.1988), writ denied, 541 So.2d 868 (La. 1989), the court held that discharging a firearm aimed directly at a victim is indicative of an intent to kill or inflict great bodily harm. In that case, testimony revealed that the defendant put a gun to the victim's head after the two had been drinking and arguing, and the victim said "do it."
The only case which relies solely on the testimony of the defendant to obtain a murder conviction, as in this case, is State v. Beck, 445 So.2d 470 (La.App. 2 Cir.1984), writ denied, 446 So.2d 315 (La.1984). In that case the defendant testified that she twice slammed her eighteen month old child's head in an aluminum window because the child would not stop crying. The appellate court affirmed the second degree murder conviction, and held that the defendant's actions on a mere infant supported an inference that the defendant intended to kill or inflict great bodily harm on the victim.
In this case, although the victim was shot in the head at close range, there is no evidence to show that the defendant had the specific intent to kill or inflict great bodily harm. There is no testimony regarding an argument between the victim and the defendant, or that the defendant was angry or enraged or distraught. The only testimony regarding the event is from the defendant, and although it is self-serving, it is a reasonable hypothesis of the events. Further, the State presented no evidence to link the defendant with the shooting or to show that the relationship between the defendant and the victim was hostile or even unpleasant.
Although the jurisprudence supports the proposition that specific intent can be inferred from the fact that the victim was shot at close range, that jurisprudence relies on the support of other circumstances indicating specific intent. Further, the Louisiana Supreme Court has held that "[t]he jury should not be permitted to believe that just because someone is killed, the law regards it as a reasonable inference that someone intended to harm him." State v. Davis, 411 So.2d 2 (La.1982).
The second circumstance from which a juror might draw the inference of specific intent to kill is that the defendant stated, prior to trial, that he did not do it, yet at trial, stated that he was holding the gun. This set of circumstances, alone, however, does not indicate a specific intent to kill or inflict great bodily harm. The defendant explained that he and the victim were in the yard and the victim was attempting to learn how to use the gun. There was no mention of malice or argument or ill-temper either before, during or after. Further, even if the jury did not believe the defendant, this evidence does not exclude every reasonable hypothesis of innocence (such as fear alone) as required by law.
The third circumstance from which an inference of specific intent to kill might be drawn is that the defendant changed his shirt after the shooting. However, the defendant gave a reasonable explanation that he did not change his shirt, but simply put on a shirt over his undershirt. Likewise, there was no testimony of excessive blood or bloodstains, or anything which would have given the inference that the defendant was trying to hide something by changing his shirt or putting one on.
Aside from these circumstances, there is nothing in the transcript which would give rise to an inference of the specific intent to kill or inflict great bodily harm. For this reason, the requisite specific intent was not shown at trial. Consequently, when viewing the evidence in a light favorable to the State, the jury could not have found the defendant guilty of second degree murder beyond a reasonable doubt.
An additional issue to be considered in this appeal is whether this court has the authority to modify the verdict rendered by the jury. La.C.Cr.P. art. 821(E) provides that: "[i]f the appellate court finds that the evidence viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense."
*284 In this case, the only responsive verdict, other than not guilty, is manslaughter. See La.C.Cr.P. article 814.
Manslaughter is defined as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately cause by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
The evidence adduced in this case does not fit the crime of manslaughter. Since manslaughter is the only responsive verdict which this Court could render a judgment of conviction, this Court cannot modify the judgment of conviction.
Since the evidence adduced at trial is insufficient to support a verdict of second degree murder or manslaughter; the defendant's conviction and sentence are reversed and vacated.
CONVICTION AND SENTENCE REVERSED AND VACATED.
LANDRIEU, J., dissenting with reasons.
LANDRIEU, Judge, dissenting with reasons.
A review of a criminal conviction record for the sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but rather whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). Under this standard, the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing are preserved; thus, if rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. State v. Mussall, 523 So.2d 1305, 1310-11 (La.1988). Specific intent is a state of mind which need not be proven as a fact, but which may be inferred from the circumstances of the crime and the actions of the defendant. State v. Amos, 550 So.2d 272, 276 (La.App. 4th Cir. 1989).
The defendant told conflicting stories to the police and the victim's relatives during the course of the investigation. He first claimed that the victim shot herself, then claimed that he shot her by mistake in an attempt to shoot a purported robber, and then claimed that the purported robber shot her. At trial, however, he testified that the victim shot herself when she playfully tried to grab the gun from him. Apparently unpersuaded by the defendant's own self-serving testimony, particularly in light of the fact that the victim was shot in the middle of the forehead at close range which is suggestive of murder rather than an accidental shooting, the jury concluded that the defendant had the requisite specific intent to kill his wife and did in fact kill her.
For these reasons, I respectfully dissent.