709 So.2d 852 (1998)
STATE of Louisiana, Appellee,
v.
Tonya DUNN, Appellant.
No. 30560-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*854 Hunter, Blue & Johnson by Robert C. Johnson, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
STEWART, Judge.
This criminal appeal arises from the Fourth Judicial District Court, Ouachita Parish, the Honorable Michael S. Ingram presiding. The defendant, Tonya Dunn, was convicted by bench trial of aggravated battery a violation of La. R.S. 14:34, and sentenced to serve three years imprisonment at hard labor. The defendant now appeals urging three (3) assignments of error. We vacate and remand.

FACTS
On the evening of June 6, 1996, the defendant and several of her relatives were at her aunt's residence located at 2941 Lynn Drive, Monroe, Louisiana. While there, Carolyn and Geneva Dunn came over to inform them that Henry Mac Goins had sexually molested the defendant's niece. After being informed of this, the defendant, Dominique Coleman, Carolyn Dunn and Geneva Dunn walked to the home of William McDonald where Henry Mac Goins was visiting. Beer bottles were thrown at the windows of the house and several women entered the home of Mr. McDonald uninvited and began attacking Mr. Goins.
Mr. Goins received sutures for lacerations to the arms and head at E.A. Conway Hospital. He was treated and released. However, the next day he was so weak that he was taken to a hospital in Columbia where he received a transfusion of 2 pints of blood and was hospitalized for six days.
Gerald Douglas Carter, Jr., an officer with the Richwood Police Department on June 6, 1996, testified as both a state and a defense witness. Officer Carter stated that he responded to a disturbance call and when he arrived at Mr. McDonald's residence, he saw Mr. Goins who was bloody. Officer Carter spoke with Mr. Goins and identified his assailants as Geneva Dunn, Carolyn Dunn, Dominique Coleman and the defendant.
Inside Mr. McDonald's house, Officer Carter observed broken glass and a lot of blood. Just before he arrived at the crime scene and during the course of the investigation into this matter, Officer Carter came into contact with Geneva Dunn and Carolyn Dunn. Geneva and Carolyn were approximately three feet apart and both were yelling. Officer Carter noted in his report that either Geneva or Carolyn or possibly both made the statement "The mother fucker is back there. You better go get him before we finish the job. If he ain't dead already, we'll kill the mother fucker." Officer Carter could not distinguish whether Geneva or Carolyn or both made the statement because both were talking at the same time. Officer Carter also testified that when he encountered Geneva and Carolyn Dunn, he did not see the defendant anywhere around.
The only witness to testify that the defendant struck Mr. Goins with a bottle was the defendant's aunt, Carolyn Dunn, who had already been convicted in a jury trial for the same offense. Even though she had already been convicted, Carolyn Dunn maintained that she never hit Mr. Goins; she testified that the defendant hit Mr. Goins with bottles and she only went in the house to try and stop the altercation. The District Attorney granted Carolyn Dunn immunity from prosecution for perjury in this case in exchange for her testimony against the defendant.
On cross-examination, when asked why she did not tell Chief Kelly that the defendant was involved, Carolyn Dunn stated that she was trying to protect her niece, but would *855 have told him if she had known "they was going to go back and lie on me like this here." When asked about the statement she, or Geneva Dunn in her presence, made to Officer Carter immediately after the incident Carolyn Dunn adamantly maintained not only that the statement was not made but that she did not even see Officer Carter and that if he testified or wrote in his report that the statement was made by her or Geneva, Officer Carter would be lying.
Mr. McDonald testified that the women were hitting Mr. Goins with their hands. Mr. McDonald testified that he did not see any objects in the women's hands; however, it took him two weeks to clean all of the broken glass out of his house and that when the women left, Mr. Goins was bleeding. Although the defendant was present during the trial, Mr. McDonald maintained at the trial that he did not see any of the women who had attacked Mr. Goins present in the courtroom.
Ms. Helen Mae Williams, who was present at Mr. McDonald's house when the attack occurred, called Katherine Mitchell, Mr. Goins' sister, and informed her that people were attacking Mr. Goins. Ms. Williams, who is the defendant's aunt, testified that she did not recognize the people who attacked Mr. Goins and specifically stated that the defendant was not one of the women accosting Mr. Goins.
Robert Kelly, Jr., the Chief of Police in Richwood, had contact with the defendant on the date of the incident and did not observe any noticeable blood stains on her clothing or any abrasions, cuts or bruises on her hands. Chief Kelly took a statement from the defendant on June 9, 1996 which was admitted into evidence without objection.
According to the defendant's statement, two of her aunts, Carolyn Dunn and Geneva Dunn, told her that the defendant's niece, Veronica, was acting strange and Veronica said that Mr. Goins sexually molested her. Defendant and a juvenile cousin, Dominique, went to talk to Mr. Goins. According to the defendant's statement, Mr. Goins began acting aggressively so defendant and Dominique began hitting him with their hands. Carolyn Dunn and Geneva Dunn then appeared and began hitting Mr. Goins at which time defendant and Dominique left. In her statement, the defendant denied ever striking Mr. Goins with a bottle or any other object other than her hands and said that she did not see anyone hit or cut Mr. Goins with a bottle or any other object.
The defendant was charged with aggravated battery of Mr. Goins. Based upon the facts and testimony, the defendant, Tonya Dunn, was convicted by bench trial of aggravated battery a violation of La. R.S. 14:34, and sentenced to serve three years imprisonment at hard labor.

CONFLICTING, PERJURED AND INSUFFICIENT EVIDENCE
By this assignment of error, the defendant challenges the sufficiency of the evidence against her to support a conviction of aggravated battery. The defendant alleges that there are inconsistencies in the testimony of Carolyn Dunn, a convicted felon, and that none of the witnesses offered any significant testimony relating to the defendant's guilt, with the exception of Chief Kelly whose testimony related to the defendant's statement wherein the defendant admitted her presence at the scene but denied striking the victim with a bottle or any other object.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. If an appellate court reviewing a criminal conviction finds the evidence insufficient to support a guilty verdict, the constitutional protection against double jeopardy bars retrial of the defendant. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); see U.S. Const. Amend. V, XIV. All other issues in the case become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975; State v. Hearold, 603 So.2d 731 (La.1992).
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, supra, if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in *856 the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Prince, 29,208 (La.App.2d Cir. 01/24/97), 688 So.2d 643, 649.
The proper method to raise the issue of insufficiency of the evidence is by motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. The record does not indicate that the defendant made such a motion, but does contain an assignment of error which alleges the evidence was insufficient. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) imposed a review obligation on appellate courts when it held that due process protects a defendant from conviction except upon proof beyond a reasonable doubt. Thus, this court has taken the position that it will address the issue on appeal. See State v. Bryant, 29,344 (La.App.2d Cir. 5/7/97), 694 So.2d 556; State v. Johnson, 29,269 (La. App.2d Cir. 4/2/97), 691 So.2d 370; State v. Moore, 29,212 (La.App.2d Cir 1/22/97), 687 So.2d 647.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); La.C.Cr.P. art. 821. That standard, initially enunciated in Jackson, supra, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Wilcoxon, 26,126 (La.App. 2 Cir. 6/22/94),639 So.2d 385, 388; State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993). This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const., art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984).
The defendant was convicted of aggravated battery. In defining the crime, La. R.S. 14:34 provides as follows:
Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
In an indictment charging aggravated battery, the trier of fact could find a defendant guilty of the responsive verdicts of second degree battery or simple battery. La. C.Cr.P. art. 814. La. R.S. 14: 34.1 defines second degree battery as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
La. R.S. 14:35 defines the crime of simple battery as follows:
Simple battery is a battery committed without the consent of the victim.
Whoever commits a simple battery shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
Battery is the intentional use of force or violence on the person of another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. In the absence of qualifying provisions, the term "intent" refers to "general criminal intent." La. R.S. 14:11. An aggravated battery conviction requires proof of only general criminal intent or showing that the defendant in the ordinary course of *857 human experience, must have adverted to prescribed criminal consequences as reasonably certain to result from the defendant's act or failure to act. La. R.S. 14:10; State v. Howard, 93-74 (La.App. 3d Cir. 11/2/94), 649 So.2d 489, writ denied, 94-2944 (La.3/17/95), 651 So.2d 266.
A reviewing court accords great deference to a trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987); State v. Fields, 29,075 (La. App.2d Cir. 1/22/97), 687 So.2d 1064. This court is not required to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt but whether a rational trier of fact interpreting all of the evidence in this case in the light most favorable to the prosecution could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
In applying the reasonable doubt or sufficiency of evidence standards, the focus of this court must be a narrow one considering only whether the defendant was convicted of aggravated battery upon inadequate evidence, while giving deference to the trier of fact's credibility call. In the instant case, the aggravated battery conviction is supported exclusively by the uncorroborated and inconsistent testimony of a co-defendant.
As a general principle of Louisiana law, a conviction can be sustained on the uncorroborated testimony of a purported accomplice. However, when the state's case relies upon the uncorroborated testimony of a purported accomplice, the trial judge (or jury) should treat such testimony with great caution. This great caution is not required if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation. State v. May, 339 So.2d 764 (La.1976); United States v. Lee, 165 U.S.App. D.C. 50, 59, 506 F.2d 111 (D.C.Cir.1974); United States v. Clark, 480 F.2d 1249 (5th Cir.1973); 411 F.2d 1126 (5th Cir.1969); United States v. Cianchetti, 315 F.2d 584 (2d Cir.1963).
As observed by the court in United States v. Lee, supra, "when there is no corroboration, the problem of perjury looms large and warrants a judicial exposition of the frailties of accomplice testimony." State v. Murray, 375 So.2d 80, 88 (La.1979). Uncorroborated testimony presents the danger that an innocent person might be convicted solely on the perjurious fabrication of an accomplice. Id. at 89.
In this case, the only witness to testify that the defendant hit Mr. Goins with a dangerous weapon, a beer bottle, was Carolyn Dunn, the defendant's aunt who was earlier convicted of aggravated battery in the same incident. The District Attorney granted Carolyn Dunn immunity from prosecution for perjury in this case in exchange for her testimony against the defendant, which is the only evidence produced at the defendant's trial to support the defendant's conviction for aggravated battery.
In her testimony, Carolyn Dunn clearly was bitter and upset with the defendant because the defendant apparently implicated her in this incident for which she was later found guilty. The intricacies and complexities of family relationships should not be underestimated. Looking at Carolyn Dunn's testimony as a whole, her story is inconsistent with that of the other witnesses. Carolyn Dunn testified that she never saw or spoke to Officer Carter until she had been apprehended and brought to the police station and if anyone testified differently, he must be lying.
Officer Carter, on the other hand, testified that he saw both Carolyn Dunn and Geneva Dunn the evening of the incident just a short way from the crime scene and both women were agitated and yelling. It is notable that Officer Carter testified that the defendant was not present when Carolyn Dunn and Geneva Dunn made the statements to him. It seems probable that had the defendant left the crime scene with Carolyn and Geneva, Officer Carter would have seen the defendant also since he encountered the women very near the crime scene.
*858 This gives some credence to the defendant's version of the story contained in her statement to the police. According to the defendant's statement, she and Dominique confronted Mr. Goins first but left the scene when Carolyn and Geneva arrived. Further, Chief Robert Kelly, Jr. testified that he did not observe any noticeable blood stains on her clothing or any abrasions, cuts or bruises on the defendant's hands. The photographs and medical records show substantial blood loss with blood splatters on the walls and pools of blood on the floors.
The other two witnesses who testified and were present during the incident, William McDonald and Helen Mae Williams, did not identify the defendant as one of the perpetrators of the attack (Mr. McDonald stated that he did not see any of the people who had committed the attack in the courtroom and Ms. Williams stated affirmatively that defendant was not in Mr. McDonald's house the night of the attack). These witnesses were called by the state, not by the defendant, and yet were still unable to testify that the defendant participated in the attack. The defendant, in her statement to the police which was admitted into evidence without an objection from the defense, actually admits to being present initially and to hitting Mr. Goins with her fists, but she denies either striking Mr. Goins with any object or witnessing anyone else strike Mr. Goins with an object. The defendant claims to have left the scene when Carolyn and Geneva arrived.
The victim, Mr. Goins, did not testify. Mr. Goins was present during the trial, called to the stand by the state but did not testify, for reasons known only to the state. Therefore, the state does not have the benefit of the victim positively identifying the defendant as one of the women who hit him with a dangerous weapon.
Carolyn Dunn testified that the defendant, Dominique Sherman and Christopher Myles hit Mr. Goins with the bottle and that she went to Mr. McDonald's house to stop the altercation. However, Christopher Myles and Dominique Sherman were never charged with aggravated battery. In one instance, Carolyn Dunn offered testimony that she only went to the house to try to stop the altercation. Carolyn Dunn later offered inconsistent testimony that she was not inside the house but watched the altercation from outside the house. However, when asked whether she made the comments in question to Officer Carter, Carolyn Dunn testified that she was not at the crime scene. It is impossible for Carolyn Dunn to stop an altercation while watching it from outside and even more impossible to stop the altercation or identify the defendant and not be at the crime scene.
The state did not introduce any other witnesses or evidence to corroborate Carolyn Dunn's testimony or any fact in her version of the incident that the defendant attacked Mr. Goins with a beer bottle. Carolyn Dunn's testimony is inconsistent, in direct conflict with the testimony of all the other state witnesses and does not corroborate any material fact which tends to prove that the defendant was connected with the aggravated battery. Mr. Goins' injuries, medical records and the broken beer bottles are evidence than an aggravated battery was committed. However this evidence does not corroborate that the defendant committed or participated in the aggravated battery.
In fact, two of the state's witnesses, Mr. McDonald and Ms. Williams, both testified that they did not see the defendant hit Goins with the bottle. Mr. McDonald's testimony that the bottles came from outside the house and that afterwards two people came in and began attacking the victim is similar to the defendant's statement that she and Dominique left when Carolyn and Geneva arrived.
In cases involving a defendant's claim that he was not the perpetrator of the crime, or where he remains silent, the Jackson rationale requires the State to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Baker, 28,152, (La.App. 2 Cir. 5/8/96), 674 So.2d 1108, 1111 State v. Brady, 414 So.2d 364 (La.1982); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991). Mr. McDonald, state's witness, testified that he was in the room during the altercation, witnessed the altercation and he could not positively identify the defendant as one of the women who attacked *859 Goins with a beer bottle. Yet, Dunn, who testified that she witnessed the altercation from outside the house, identified the defendant as one of the attackers. This conflict in the direct evidence and questionable and unreliable identification creates a reasonable doubt whether the defendant was in the house at the time of the beer bottle attack, and further creates reasonable doubt whether the defendant intentionally inflicted force or violence with a dangerous weapon upon Goins.
An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Camp, 446 So.2d 1207, 1210, (La.1984).
The "reviewing court may not disregard its duty to consider constitutional sufficiency of evidence under due process of law, as interpreted by theJackson v. Virginia, decision of the United States Supreme Court, simply because the record contains testimony which tends to support each fact necessary to constitute a crime, and if the court finds that no rational trier of fact, viewing all evidence from rational pro-prosecution standpoint, could have found guilt beyond a reasonable doubt then conviction cannot stand constitutionally." (Emphasis added.) State v. Mussall, 523 So.2d 1305, 1310 (La.1988). Only irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Mussall, supra at 1310; State v. Taylor, 96-1043 (La.App. 3 Cir. 2/5/97), 688 So.2d 1262; Jackson v. Virginia, supra, 443 U.S. at 307, 99 S.Ct. 2781, 61 L.Ed.2d at 560.
The question for this court is whether any rational trier of fact could have found sufficient proof beyond a reasonable doubt of each essential element of the crime of aggravated battery and sufficient proof of the defendant's identity as perpetrator of that crime. There is no question that the defendant intentionally hit Mr. Goins with her fists. However, there is reasonable doubt as to whether the defendant used anything other than her fists on Goins and whether she was still in the house at the time that the beer bottle attack occurred. While the defendant may have committed a crime, it is not, by legal definition, aggravated battery, as the prosecution failed to prove the defendant used a dangerous weapon upon Mr. Goins.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Gipson, 26,433 (La.App. 2 Cir. 10/26/94), 645 So.2d 1198, 1200; State v. Braswell, 605 So.2d 702 (La. App. 2d Cir.1992); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
However, this is a case in which internal contradictory evidence exists, evidence presented by the state. "Eye witness testimony alone is usually sufficient in the mill run of cases, but in this particular case even a reasonably pro-prosecution rational trier of fact is driven to have a reasonable doubt by the numerous eccentricities and lack of corroboration." State v. Mussall, supra at 1311. The absence of any corroboration that the defendant actually attacked Goins with a bottle, a fact which the state could easily have supported with testimony by the victim, combined with a co-defendant's uncorroborated testimony that is inconsistent with the testimony of the state's other witnesses, further contributes substantially toward the creation of a reasonable doubt in the mind of any rational trier of fact. Therefore, any rational trier of fact must take a dim view of the state's case even in the most favorable light.
To predicate conviction upon the testimony of a single state witness, which contradicts that of other state witnesses who appear credible, the testimony of the single witness must appear logical and plausible in *860 light of the total circumstances of the case. We find nothing logically or plausibly supports Dunn's testimony that the defendant hit Goins with a bottle. The record does not sustain the finding of a key element required by the aggravate battery statute, that the defendant used a dangerous weapon or that the defendant intentionally inflicted force or violence with a dangerous weapon upon Mr. Goins.
We conclude that any rational trier of fact, after viewing all of the evidence in a light most favorable to the prosecution as a rational trier of fact can, necessarily must have a reasonable doubt as to the sufficiency of the evidence of the defendant's guilt and conclude that the State failed to prove all the essential elements of aggravated battery beyond a reasonable doubt, specifically, that the defendant intentionally inflicted force or violence with a dangerous weapon. The burden is not upon the defendant to prove his innocence, but upon the State to prove defendant's guilt beyond a reasonable doubt. La.-R.S. 15:271. The evidence is insufficient to support a conviction of aggravated battery.
Having concluded that there is insufficient evidence to convict the defendant of aggravated battery, we must next consider whether there is sufficient evidence to convict her of one of the lesser included offenses. An appellate court may modify the verdict and render a judgment of conviction on a lesser included responsive offense, in lieu of granting a post verdict judgment of acquittal, if the evidence viewed in a light most favorable to the state supports a conviction of a lesser included offense. La.Code Crim.Proc.Ann. art. 821(E) (West Supp.1993); State v. Hawkins, 93-1260, (La.App. 4 Cir. 1/27/94), 631 So.2d 1288, 1290; State v. Sean Williams, 625 So.2d 280 (La.App. 4th Cir. 1993); State v. Howard, 630 So.2d 2, 3 (La. App. 3 Cir.1993); State v. McBride, 504 So.2d 840 (La.1987).
While the evidence adduced in this case does not fit the crime of aggravated battery, the evidence does support a conviction for a lesser and included offense which is a legislatively authorized responsive verdict, ordering entry of a judgment of guilty of the lesser and included offense is appropriate. LSA C.Cr.P. art. 821 E; see State v. McCue, 484 So.2d 889, 893 (La.App. 1 Cir. 1986) State v. Byrd, 385 So.2d 248 (La.1980). In this case, the only responsive verdict other than not guilty, is simple battery. Simple battery is defined in La. R.S. 14:35 as a battery committed without the consent of the victim. The defendant intentionally used force by hitting the victim with her fists. The victim did not consent to this use of force. Thus, the defendant committed a simple battery upon the victim. Because we order the entry of a judgment of guilty of the lesser and included offense as appropriate, it is unnecessary to consider the defendant's remaining assignments of error, as the case is remanded to the trial court for resentencing.

DECREE
We, therefore, vacate the defendant's conviction of aggravated battery and enter a conviction for the responsive offense of simple battery (La. R.S. 14:35) to which defendant admitted in her statement. The case is remanded for resentencing for this conviction.
CONVICTION AND SENTENCE VACATED; RESPONSIVE VERDICT ENTERED; AND REMANDED FOR RESENTENCING.
BROWN, J., dissents with reasons.
BROWN, Judge, dissenting.
After speaking with her two aunts, defendant and her cousin went to the home of William McDonald to confront Henry Goins. Comparing the testimony of McDonald with defendant's statement to the police, the majority of this court concludes that the 20-year-old defendant and her juvenile cousin threw a beer bottle(s) through a window, came inside and physically attacked the 54-year-old victim. Defendant's two aunts also came inside and attacked the victim.
The victim was taken to the hospital for lacerations of the head and wrist. His medical records were filed into evidence. The smashed window was photographed. The crime scene photographs showed blood, broken *861 bottles and glass throughout the house. The two aunts were separately tried and convicted of aggravated battery. Defendant waived her right to a jury and was tried by the court.
One aunt, Carolyn Dunn, testified for the prosecution. She claims to have seen defendant strike the victim with a beer bottle and described the attack as so aggressive that defendant's boyfriend had to pull defendant from the victim.
After characterizing Dunn as an accomplice, the majority opinion finds that "nothing logically or plausibly supports Dunn's testimony." I disagree. Although claiming self-defense, defendant admitted to the investigating officer that she went to the house, confronted and struck the victim with her hands. These statements corroborate the state's case. The physical evidence of the broken beer bottles, glass and window are also corroborative. When put in perspective, McDonald's testimony corresponds with the scenario described by Dunn. Finally, the injuries inflicted on the victim are consistent with being struck by a bottle.
In addition, in her statement to the police, defendant admits to acting in concert or as a principal with her two aunts. She states:
... we (defendant and her cousin) hit him, Carolyn and Geneva (the two aunts) came and hit him too. Dominique and I quit hitting him. My Baby's Daddy (boyfriend) came and got me out of the house.
Neither defendant, her boyfriend nor her cousin testified. Thus, the trial court was left only with the state's case. The trial court expressly stated that after considering all of the evidence, it believed the critical portions of Dunn's direct testimony. A reviewing court may not second guess the trier of fact's credibility calls. In particular, a reviewing court should not rely on the self-serving part of a declaration, admitted as a statement against interest, to overrule a trial court's verdict based on competent in-court testimony. I would affirm the trial court's verdict.