|STEWART, J.
The defendant, William Jeff Cherry (“Cherry”), was charged with one count of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. After a bench trial, Cherry was found guilty of the responsive verdict of aggravated battery, a violation of La. R.S. 14:34. The trial court sentenced Cherry to imprisonment of five years at hard labor and imposed a fine of $1,000 plus costs. A motion for new trial was denied by the trial court. Cherry now appeals the denial of his motion for new trial, as well as his conviction and sentence. We affirm.
FACTS
In June 1995, Cherry began dating Sara Kamperman (“Kamperman”). Cherry and Kamperman became engaged a few months later in September 1995, at which time Kamperman began wearing an engagement ring given to her by Cherry. By November 1995, the relationship began to sour, and Kamperman returned the ring to Cherry. Cherry threatened to attempt suicide on a number of occasions, usually when Kamperman suggested slowing down their relationship. Prior to Thanksgiving, Cherry, who was employed as an L.P.N., lost his job.
Kamperman spent Thanksgiving Day with Cherry and remained that night at Cherry’s home, even after having broken up with Cherry that day. On the evening of Friday, November 24, 1995, Kamper-man returned to Cherry’s home at approximately 5:00 p.m., to drop off a birthday present for Cherry’s brother and to see Cherry before going to her parents’ home. Cherry and Kamperman spoke in Cherry’s bedroom for about fifteen to twenty minutes, during which time Cherry, who was depressed about losing his job and losing Kamperman, begged her to come back to him. At one point Sara returned to her car to retrieve a wrapping for the gift for Cherry’s brother. When she returned to Cherry’s bedroom, she found him in a semi-reclined position on his bed with a pillow on his lap. Their ^conversation resumed with Cherry becoming more upset, crying, and appearing to have trouble breathing.
According to Kamperman, she became concerned about Cherry and moved a step closer to him to console him, at which point his expression and demeanor changed. Cherry was no longer crying and did not appear short of breath. Cherry stood up, dropped the pillow, reached out his arm, and shot her. He did not say anything. Kamperman stated that she first saw the gun as the pillow dropped and that she raised her left hand. The bullet injured Kamperman’s left thumb and entered the upper right side of her chest. Kamper-man fell to the floor after being shot and remained conscious. She noted that the time was “three minutes to six”. Kamper-man testified that she begged Cherry to help her and to call 911 but that he did nothing at first. Cherry knelt down beside her, possibly to check her pulse, then left the room. Cherry returned to the room carrying a yellow box which he placed on the bed and placed the gun beside the box. Kamperman also testified that Cherry stated he did not want to go to jail, so she told him that she would say the shooting was an accident. She told him that she loved him and that they would be together. Kamperman stated that Cherry then placed the engagement ring that she had returned to him back on her finger and called 911. Kamperman denied that Cherry threatened suicide on this occasion.
Cherry testified that the shooting was accidental. He explained that he did not know that Sara was going to return after leaving his room the first time. He retrieved a Glock 10mm from his collection of more than 20 guns in order to clean it in preparation for a possible deer hunt with his brother. Cherry stated that the gun did not contain a magazine; however, he did not check to see whether a bullet was in the chamber. Cherry planned to clean the gun on his bed and stated that his gun cleaning kit was out on his bed. Cherry *897 testified that he was surprised to see Kam-perman return to his room and that while they talked he begged her not to | ¡¡leave. He was upset and crying when Kamper-man turned to leave. Cherry picked up the gun and called out to Kamperman. Cherry testified that he told her that if he could not be with her, then he would not be with anyone. Kamperman then walked up to him as he brought the gun around, at which point Kamperman hit his hand and the gun discharged. Kamperman walked a couple of steps and fell to the ground as Cherry dropped the gun and grabbed his ears because of the deafening noise. Cherry testified that he then went to Kam-perman, located the wound, placed a pillow over it, hugged her and told her that he loved her, and then called 911. He denied getting the gun cleaning kit out or hesitating to call for help. He stated that the engagement ring was on an ottoman next to where Kamperman was lying on the floor.
Lane Johnson (“Johnson”) and Kelly Duke (“Duke”), both EMT personnel who transported Kamperman to the hospital, heard Kamperman state that the shooting was not accidental. Lane asked Kamper-man what happened and she replied that it was not an accident and that Cherry waited to call 911 because he was afraid of getting in trouble. Duke testified that Cherry did not show much emotion at the scene. Rather, he was not crying, and he had a blank, calm look. Officers Paula Langford and Michael Blackmon of the Shreveport Police Department investigated the incident. Cherry informed them that he and Kamperman were sitting on the bed when the gun accidentally discharged while he was cleaning it. Cherry testified that he gave this statement because he was embarrassed to admit that he was suicidal. According to Officer Lang-ford, Cherry appeared very calm and was not crying. Officer Blackmon recalled that Cherry seemed upset and made crying sounds but exhibited no tears. Officer Blackmon also recalled that Cherry did not seem surprised when he was charged with attempted second degree murder.
| ¿After a bench trial of this matter, the trial court determined that the State failed to meet its burden of proving that Cherry had the specific intent to kill as required to prove the charge of attempted second degree murder. The trial court noted that he had concerns about the veracity of both Kamperman and Cherry and expressed the opinion that both individuals had a need for psychological counseling. With these expressed concerns, the trial court concluded that the shooting was not accidental and that it did not occur while Cherry cleaned the gun. This conclusion was based on four observations: (1) Kamperman stated from the beginning that the shooting was not accidental; (2) Emergency personnel confirmed hearing Kamperman state that the shooting was not accidental as she was transported to the hospital; (3) Expert testimony was of the opinion that the shooting was not accidental; and (4) Only Cherry’s testimony supported the theory of an accidental shooting. The trial court concluded that while the evidence adduced at trial was not sufficient to prove attempted second degree murder, it was sufficient to find Cherry guilty of the responsive verdict of aggravated battery as provided in La. C.Cr.P. art. 814(A)(4). Thereafter, the trial court sentenced Cherry to five years at hard labor and imposed a fine of $1,000 plus costs.
After sentencing, Cherry filed a motion for new trial based on a motion for summary judgment filed by Kamperman in her civil suit against him. In the motion for summary judgment, Kamperman’s counsel argued that there is no genuine issue of material fact that Cherry’s actions were anything other than negligence. Cherry asserted in his motion for new trial that if Kamperman had testified in accordance with her allegations in the summary judgment motion then the trial court would have had no alternative but to acquit him. The trial court denied the motion for new *898 trial and explained that Kamperman’s actions in the civil suit changed neither his position regarding her credibility nor the weight that |Khe gave her testimony in the criminal trial. Cherry now asserts three assignments of error on appeal.
SUFFICIENCY OF THE EVIDENCE
Cherry contends that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He argues that the State’s case rested primarily upon Kamperman’s testimony and that it was established at trial that Kamperman is untruthful. For proof of Kamperman’s untruthfulness, Cherry points to Kamper-man’s own admission that she lied to him about her background. He also points out that Kamperman testified that she did not live at his residence from September to November 1995, even though the evidence established otherwise. Cherry also interprets the expert testimony as supporting his claim that the shooting was accidental. Such testimony indicated that Kamper-man’s left thumb was within one or two inches of the gun barrel when it discharged, that her thumb was between the gun barrel and her chest upon discharge, and that her chest was within one or two feet of the gun when it was fired. Cherry also asserts that the state presented no evidence that the gun could not have discharged as a result of being struck by Kamperman.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for- appellate review of sufficiency of the evidence claims is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2 nd Cir.), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. In reviewing sufficiency of the evidence, we must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct | (¡evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2 nd Cir.1988).
This court’s authority to review questions of fact in a criminal case is limited to an evaluation of the sufficiency of the evidence under the Jackson standard and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2 nd Cir.1984). A reviewing court accords great deference to a trier of fact’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La. App. 2 nd Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La.App. 2 nd Cir. 10/30/96), 682 So.2d 847.
Cherry was convicted of aggravated battery, which is a battery committed with a dangerous weapon. La. R.S. 14:34. A battery is defined as “the intentional use of force or violence upon the person of another.” La. R.S. 14:33. A dangerous weapon, as that term is defined in La. R.S. 14:2(3), is “any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” An aggravated battery conviction requires proof of only general criminal intent or a showing that the defendant in the ordinary course of human experience, must have adverted to prescribed criminal consequences as reasonably certain to result *899 from the defendant’s act or failure to act. La. R.S. 14:10; State v. Dunn, 30,560 (La. App. 2 nd Cir. 2/25/98), 709 So.2d 852.
In applying the reasonable doubt or sufficiency of the evidence standards, our focus must be a narrow one considering only whether Cherry was convicted of aggravated battery upon inadequate evidence, while giving deference to the trier of fact’s credibility call. State v. Dunn, supra. The evidence at trial presented two conflicting versions of the shooting. Kamperman testified that the shooting was not an accident and that Cherry stood up, reached his arm out, and shot her. Cherry testified that the shooting was accidental and that the gun discharged when Kamperman hit his hand as he was bringing the gun around to shoot himself. The trier of fact, while expressing concerns about the veracity of both Cherry and Kamperman, made a credibility call to accept Kammperman’s testimony as to how the incident occurred. In doing so, the trial court obviously dismissed Cherry’s testimony as incredible. We cannot say that the trial court was clearly wrong in its evaluation of the witnesses’ testimony and its credibility call.
A significant factor in support of the trial court’s determination is that Kamper-man’s version of the shooting was consistent immediately after the shooting and throughout trial. Johnson and Duke, emergency personnel who transported Kamperman to the hospital, testified that Kamperman said the shooting was not accidental. Johnson also testified that Kam-perman said that Cherry waited to call 911 because he was afraid of getting in trouble. Although Cherry points to evidence of Kamperman’s past untruthfulness, including the testimony of Kamperman’s mother, Darlene Kamperman, that Kamperman is not always truthful, nothing at trial established that Kamperman lied about the shooting.
In contrast to Kamperman’s consistent version of how the shooting occurred, Cherry’s version was contradicted by his own statement to the police called to the scene of the shooting incident. Immediately after the shooting, Cherry told Officers Langford and Blackmon that the gun discharged and struck Kamperman as he was cleaning it. While Cherry argues that his trial version is ^supported by the testimony of experts who analyzed the crime scene and tested the gun used in the shooting, our review of the record indicates that the testimony referred to by Cherry is as consistent with Kamperman’s version of the incident as it may be with Cherry’s version. The testimony of Sergeant Mark Rodgers of the Shreveport Police Department, who analyzed the crime scene, and the testimony of Richard Beighley, a criminologist who tested Cherry’s gun, indicates that the shooting occurred at close range with Kamperman likely facing the muzzle of the gun and with her left hand placed as an intermediate target between her chest and the barrel of the gun. This scenario is consistent with Kamperman’s version that she stepped closer to Cherry to console him, then raised her left hand as he fired the gun.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that Cherry committed the offense of aggravated battery. Kamperman’s testimony alone is sufficient as proof that Cherry committed all the elements of the offense. We find no merit in this assignment of error.
MOTION FOR NEW TRIAL
Cherry contends that the trial court erred in denying his motion for a new trial. The basis of the motion for a new trial was a motion for summary judgment filed by Kamperman in her civil suit against Cherry. The memorandum in support of summary judgment prepared by Kamperman’s counsel includes the assertion that there is no genuine issue of fact that Cherry’s actions during the shooting “were anything other than negligence.” Excerpts from Kamperman’s deposition were included in *900 her motion for summary judgment. Cherry points out that Kamperman initially filed suit alleging that he intentionally shot her and that she amended her petition after the criminal trial to allege that he acted either intentionally or negligently. Now in her motion for summary judgment she alleges |flthat his actions were negligent. Cherry also asserts that Kamper-man delayed her deposition until after the criminal trial because she did not want to admit that the shooting may not have been intentional. According to Cherry, Kam-perman’s summary judgment pleading filed June 18, 1998, attests to the truthfulness of his version of the shooting and casts greater doubt on her credibility.
La.C.Cr.P. art. 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
[[Image here]]
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
A defendant who seeks a new trial based on newly discovered evidence must establish that (1) the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Cavalier, 96,3052 (La.10/31/97), 701 So.2d 949.
The trial court has much discretion in ruling on a motion for new trial. State v. Hammons, 597 So.2d 990 (La.1992); State v. Haygood, 26,102 (La.App. 2 nd Cir. 8/17/94), 641 So.2d 1074, writ denied, 94,2373 (La.1/13/95), 648 So.2d 1337; State v. Robinson, 624 So.2d 1260 (La.App. 2 nd Cir.1993), writ denied, 93,2899 (La.2/11/94), 634 So.2d 372. In ruling on a motion for new trial, the trial court’s duty is not to weigh the evidence as though he were a trier of fact determining guilt or innocence, rather his duty is the narrow one of determining whether there is new material fit for a new trier of fact’s judgment. State v. Cavalier, supra; citing State v. Prudholm, 446 So.2d 729 (La.1984). The merits of a motion for new trial should always be viewed with extreme caution in the interest of preserving the finality of judgments. State v. Haygood, supra.
Furthermore, where the issue on a motion for new trial primarily involves a question of credibility the trier of fact is better situated to make such determinations. State v. Tyler, 342 So.2d 574 (La.1977). Discussing the issue of credibility as a basis for new trial in Tyler, supra, the Louisiana Supreme Court stated:
Experience teaches that recantations of trial testimony should be looked upon with the utmost suspicion. United States v. Johnson, 487 F.2d 1278 (4th Cir.1973); Larrison v. United States, 24 F.2d 82 (7 th Cir.1928). And, as a legal proposition, a new trial should not be granted on the ground that the newly discovered evidence destroys the credibility of the State’s witness. See State v. Brandle, 187 La. 945, 187 La. 945, 175 So. 628 (1937); State v. Bates, 140 La. 833, 74 So. 165, 74 So. 165 (1917), overruled on other grounds; State v. Williams, 38 La. Ann. 361 (1886).
State v. Tyler, 342 So.2d at 588.
In his motion for new trial, Cherry contends that Kamperman’s credibility was questioned by the trial court and that her credibility should now be considered non *901 existent based on events that have taken place since trial, namely her deposition testimony and the filing of a motion for summary judgment in the civil suit. The essence of Cherry’s argument is that Kamperman’s actions in the civil suit refute her testimony in the criminal trial. As such, her testimony in the criminal trial, when viewed along with her actions in the civil suit, cannot be considered credible.
The motion for summary judgment filed in Kamperman’s civil suit pertained to the issue of insurance coverage. Therefore, the necessity for arguing that Cherry’s actions were negligent, rather than intentional, is readily apparent. In the memorandum in support of summary judgment, Kamperman’s counsel asserts | nthat Cherry acted negligently and that the shooting occurred as Cherry brought the gun up towards his mouth and struck Kamper-man’s hand thereby accidentally discharging the gun. However, this theory is not supported by Kamperman’s actual deposition testimony, excerpts of which were attached to the summary judgment motion.
In her deposition, Kamperman testifies just as she did at trial. Kamperman relates that when she returned to Cherry’s room after going to her car to get a wrapping for a birthday gift, she found Cherry leaning back on his bed with a pillow over his stomach. He was upset, crying, and begging her to stay. She stepped closer to console him, at which point Cherry’s expression changed and he stood up, dropped the pillow, reached out the gun, and shot her. Kamperman also related that she put up her hand. However, contrary to the assertion put forth by counsel in the memorandum accompanying the summary judgment motion, Kamperman did not testify that she struck the gun. Rather, Kamperman stated that she “never touched the gun” and she repeatedly denied touching or grabbing the gun. Kam-perman also related in her deposition, just as she testified at trial, that Cherry hesitated in calling 911 for help, that he said he would not go to jail, that he knelt beside her and possibly checked her pulse, and that she told him that they would be married and have a family, at which point he then called for help. Upon our review of Kamperman’s deposition testimony we find nothing which refutes her testimony at trial as to how the shooting occurred. Rather, Kamperman’s deposition version of how the shooting occurred is consistent with the version given by her since immediately following the shooting.
In response to certain questions at her deposition regarding the possibility that the shooting happened as Cherry described and regarding Cherry’s state of mind as to whether he intended to shoot her, Kamperman equivocates somewhat in her responses. However, we do not find that her equivocations refute her testimony j^at trial in any way. For instance when asked whether it is possible that Cherry did not intentionally shoot her, Kamperman responds that she doesn’t know and states, “I don’t know what he was thinking at the time.” When asked whether it is possible that the shooting happened as Cherry described or whether it is possible that someone could determine that Cherry’s actions were not intentional, Kamperman responded “I suppose” and “I guess I assume that it’s possible for them to determine just about anything.” Kam-perman also stated that she does not understand why she was shot. Finally, when asked whether she still believes that Cherry intentionally shot her, she replied that she cannot tell whether he intentionally shot her because she was not in his mind and stated, “All I know is that he stood up and I was shot.”
Cherry-points to the above excerpts as evidence that Kamperman acknowledged that the shooting may not have been intentional. However, none of Kamperman’s answers are contrary to her version of the incident and no where does Kamperman state that the shooting was accidental. Kamperman merely acknowledges the fact that she cannot know and did not know what Cherry was thinking when he fired *902 the gun. Despite the strong argument by Kamperman’s civil counsel that the shooting was accidental and happened in the manner described by Cherry at trial, Kam-perman’s own words do not support that argument. In determining whether new evidence has been discovered which warrants a new trial, we must look to Kamper-man’s own words and not those of her counsel, whose argument is contrary to Kamperman’s deposition testimony.
The trial court was well aware of the weaknesses in the state’s case against Cherry. Despite concerns, the trial court found the state’s evidence sufficient to find Cherry guilty of aggravated battery beyond a reasonable doubt and denied Cherry’s motion for a new trial. The trial court explained that Kampermaris credibility was taken into consideration when rendering the guilty verdict and thatlisthe fact of her position in civil court does not change the court’s position regarding her credibility or the weight given her testimony at trial. The trial court assessed the motion for new trial and determined that the evidence from Kampermaris motion for summary judgment and deposition was not new evidence which would be likely to produce a different verdict in the event of retrial. Considering the trial court’s unique position regard to assessing credibility, we cannot say that the trial court abused its discretion in denying Cherry’s motion for a new trial.
In finding no abuse of discretion in the trial court’s denial of Cherry’s motion for a new trial, we distinguish between the arguments made by Kampermaris civil counsel in the summary judgment motion and Kampermaris own words during her deposition. Had Kamperman actually testified at her deposition that the shooting occurred in the manner described by her counsel in the summary judgment motion, then our decision to affirm the denial of the motion for new trial might have differed. However, as stated previously, Kampermaris deposition testimony is consistent with her trial testimony and does not provide support for the arguments made by her counsel in the summary judgment motion. We find no merit in this assignment of error.
SENTENCING
Cherry contends that the trial court misinterpreted and misapplied La. C.Cr.P. art. 893.3 in imposing a sentence of five years at hard labor. Cherry bases his contention on the trial court’s comment at sentencing that he desired to impose a lesser sentence but that he was statutorily required to impose a minimum sentence of five years. Cherry argues that La.C.Cr.P. art. 893.3 does not require a minimum sentence of five years.
Upon imposition of the sentence, defense counsel made an oral objection to the sentence without reasons. Cherry did not make or file.a motion for reconsideration of sentence. La.C.Cr.P. art. 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
This article precludes a defendant from presenting arguments on appeal which were not presented to the trial court. In such circumstances, the defendant is relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La. App. 2 nd Cir. 2/25/98), 707 So.2d 164. Cherry does not raise excessiveness of sentence as an assignment of error on appeal.
Although Cherry did not make a motion to reconsider sentence, our review of the record reveals no error in the trial court’s application of La.C.Cr.P. art. 893.3, which provides for the enhancement of sentences *903 imposed for felonies in which firearms were used. Relevant portions of La. C.Cr.P. art. 893.3 provide:
A. If the court finds by clear and convincing evidence that a firearm was actually used by the defendant in the commission of the felony for which he was convicted, the court shall impose the maximum sentence of imprisonment provided by law if the maximum sentence is less than five years and shall impose a sentence of at least five years if the maximum sentence exceeds five years.
B. A sentence imposed under this provision shall not be suspended and shall be imposed in the same manner as provided in the felony for which the defendant was convicted.
[[Image here]]
D. If the court finds that a sentence imposed under provisions of this Article would be excessive, the court shall state for the record the reasons for such finding and shall impose the most severe sentence which is not excessive.
The penalty range for the crime of aggravated battery includes imprisonment with or without hard labor for not more than ten years. La. R.S. 14:34. As such, the minimum sentence under Article 893.3 is five years.
At a pre-sentencing hearing, the trial court correctly concluded the following:
|1S... under Article 893[.3] ... I cannot give a suspended sentence and I have to start at five as a minimum sentence unless I can articulate for the record based upon a finding or make a finding that I articulate that it should be less than five ...
Both the state and defense counsel agreed with the trial court’s conclusion. Also, defense counsel conceded that a firearm was used in the offense, thereby conceding the applicability of Article 893.3 to enhance the sentence.
At sentencing, the trial court stated that in the absence of the enhancement provisions, the court would impose a sentence, of not more than three and one-half years at hard labor. However, in applying the enhancement provisions of Article 893.3, the trial court imposed a sentence of five years hard labor. In imposing the sentence, the trial court noted that Cherry’s actions caused serious life-threatening harm to Kamperman, that Cherry failed to persuade the court of his remorse, and that Cherry’s post-conviction psychiatric analysis did not support his contention of having suicidal tendencies. The trial court also referred to mitigating factors including Cherry’s lack of a criminal record, his employment history, and the support of his family and friends. It is clear from the record that the trial court understood that it could have sentenced Cherry to a lesser sentence than the statutory minimum under Article 893.3 if it could articulate for the record reasons why the sentence should be less. The trial court’s failure to impose a lesser sentence leads us to conclude that the court determined the sentence imposed under Article 893.3 was not excessive. We find no merit in this assignment of error.
CONCLUSION
For the reasons discussed, we affirm the conviction and sentence of William Jeff Cherry for the offense of aggravated battery.
AFFIRMED.
PEATROSS, J., dissents with written reasons.